PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-3345
_____

CHERYL JAMES; WARREN JAMES; NICOLE JAMES
v.

THE CITY OF WILKES-BARRE; WRIGHT TOWNSHIP;
WILKES-BARRE HOSPITAL COMPANY, LLC,
doing business as WILKES-BARRE GENERAL HOSPITAL;
THE WYOMING VALLEY HEALTH CARE SYSTEM;
THE WILKES-BARRE CITY POLICE DEPARTMENT;
THE WRIGHT TOWNSHIP POLICE DEPARTMENT;
DR. RUSSELL ELMER JAMES;
DR. NOEL PACLEB ESTIOKO; AMY LYNN CRAIG;
BETH ANN NOBLE; LORA DENISE PAULUKONIS;
BRIAN THOMAS MORAN; TANYA LYNN OSTOPICK;
RYAN RUSSELL SELTZER; CAROLE FLEMING PIROW;
DENNIS MONK; BRIAN STOUT;
MICHAEL MARSHALL; CHARLIE CASEY;
KATHY PICKARSKI VIDUMSKI; JASON FRANK KILLIAN
DR. MAUREEN M. LITCHMAN

Michael Marshall,

Appellant
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania

(D.C. No. 10-cv-01534)
District Judge:  Honorable James M. Munley

_____

Argued October 23, 2012
Before:  HARDIMAN, GREENAWAY, JR., and
VANASKIE, *Circuit Judges*.

(Filed: November 29, 2012)

Rufus A. Jennings
John P. Morgenstern [Argued]
Deasey, Mahoney, Valentini & North
1601 Market Street
Suite 3400
Philadelphia, PA 19103-0000
    *Attorneys for Michael Marshall, Defendant-Appellant*

James A. Brando [Argued]
William L. Higgs
Law Offices of William L. Higgs
386 South Mountain Boulevard
Mountain Top, PA 18707
    *Attorneys for Plaintiff-Appellees*

_____

OPINION OF THE COURT

_____


HARDIMAN, *Circuit Judge*.

This appeal requires us to decide whether the District Court erred when it denied a police officer's motion to dismiss a civil rights action.

I

On the evening of September 28, 2009, fifteen-year-old Nicole James sent a text message to a friend stating that she planned to commit suicide by ingesting ibuprofen pills. The friend called 911 and soon thereafter Officer Michael Marshall of the Wright Township Police Department arrived at the James residence. Officer Marshall was accompanied by two other police officers and emergency medical personnel.

When questioned by her parents, Warren and Cheryl James, Nicole admitted that she had planned to commit suicide, but said that she had changed her mind and had not ingested any pills. Nevertheless, Officer Marshall stated that Nicole had to go to the hospital for an evaluation. Nicole's parents disagreed, insisting that they wanted to handle the matter themselves. Officer Marshall then "informed Warren and Cheryl that [he] would charge [them] with assisted manslaughter if something happened to Nicole because they did not send Nicole to the hospital with the emergency medical services personnel." Compl. ¶ 50. Mr. and Mrs. James relented and gave permission for their daughter to be taken to the hospital.

Officer Marshall then informed Mr. and Mrs. James that one of them would need to accompany Nicole. They initially refused, stating that they felt unable to travel because

they had taken prescription medication earlier that evening.[1] Officer Marshall persisted, however, and Mrs. James agreed to go to the hospital with her daughter.

Cheryl James later brought suit against Officer Marshall for false arrest and false imprisonment pursuant to 42 U.S.C. § 1983 in the Court of Common Pleas of Luzerne County, Pennsylvania.[2] Officer Marshall then removed the case to the United States District Court for the Middle District of Pennsylvania, and filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). In the alternative, Officer Marshall argued that he was entitled to qualified immunity. The matter was referred to Magistrate Judge Mildred E. Methvin, who recommended that the claims be dismissed for failure to state a claim. In light of this recommendation, the issue of qualified immunity was not addressed.

After the Jameses filed objections, the District Court rejected Magistrate Judge Methvin's Report and Recommendation to the extent that it dismissed Mrs. James's § 1983 claims for false arrest and false imprisonment, and

---

[1] Mrs. James had taken anti-depression medication and had consumed numerous alcoholic beverages. She alleges that the medication left her feeling extremely drowsy. Mr. James had taken heart medication, which had the same side effect.

[2] The Complaint pleaded nineteen counts against twenty-one defendants. Only the claims against Officer Marshall for false arrest and false imprisonment are at issue in this appeal. We have limited our recitation of the facts and procedural history accordingly.

denied Officer Marshall's motion to dismiss. *James v. City of Wilkes-Barre*, 2011 WL 3584775, at *6 (M.D. Pa. Aug. 15, 2011). Officer Marshall appealed to this Court, arguing that he was entitled to qualified immunity.

Because the District Court did not address the issue of qualified immunity in its opinion, we summarily remanded the matter for an explanation as to why it denied qualified immunity to Officer Marshall. Two days later, the District Court filed a supplemental memorandum opinion. *James v. City of Wilkes-Barre*, 2012 WL 425236, at *1 (M.D. Pa. Feb. 9, 2012). The case is now ripe for disposition.

II

The District Court exercised jurisdiction under 28 U.S.C. §§ 1331 and 1343(a)(3). We have appellate jurisdiction under 28 U.S.C. § 1291 and the collateral order doctrine. *See Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 672 (2009) ("[T]he applicability of the [collateral order] doctrine in the context of qualified-immunity claims is well established; and this Court has been careful to say that a district court's order rejecting qualified immunity at the motion-to-dismiss stage of a proceeding is a 'final decision' within the meaning of § 1291." (citing *Behrens v. Pelletier*, 516 U.S. 299, 307 (1996))).

Because this case comes to us upon a Rule 12(b)(6) motion to dismiss, we accept the factual allegations contained in the Complaint as true, but we disregard rote recitals of the elements of a cause of action, legal conclusions, and mere conclusory statements. *See Iqbal*, 556 U.S. at 678–79; *Bell*

*Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–57 (2007); *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 220–21 (3d Cir. 2011). We exercise de novo review of a district court's denial of a motion to dismiss on qualified immunity grounds as it involves a pure question of law. *McLaughlin v. Watson*, 271 F.3d 566, 570 (3d Cir. 2001) (citing *Acierno v Cloutier*, 40 F.3d 597, 609 (3d Cir. 1994)).

## III

The doctrine of qualified immunity insulates government officials who are performing discretionary functions "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The Supreme Court has established a two-part analysis that governs whether an official is entitled to qualified immunity. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). We ask: (1) whether the facts alleged by the plaintiff show the violation of a constitutional right; and (2) whether the right at issue was clearly established at the time of the alleged misconduct. *Id.*; *Kelly v. Borough of Carlisle*, 622 F.3d 248, 253 (3d Cir. 2010). Courts may address the two *Saucier* prongs in any order, at their discretion. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). If the plaintiff fails to satisfy either prong, the defendant is entitled to judgment as a matter of law. *See id.* at 232.

## A

The first question of the *Saucier* analysis is whether a constitutional violation occurred. This "is not a question of

immunity, but whether there is any wrong to address." *Ray v. Twp. of Warren*, 626 F.3d 170, 174 (3d Cir. 2010) (citing *Curley v. Klem*, 499 F.3d 199, 207 (3d Cir. 2007)). Here, the Complaint alleges that Officer Marshall falsely arrested and imprisoned Mrs. James when he insisted that she accompany her daughter to the hospital in an ambulance.

B

To state a claim for false arrest under the Fourth Amendment, a plaintiff must establish: (1) that there was an arrest; and (2) that the arrest was made without probable cause. *See Groman v. Twp. of Manalapan*, 47 F.3d 628, 634 (3d Cir. 1995); *Dowling v. City of Phila.*, 855 F.2d 136, 141 (3d Cir. 1988). The Complaint at issue in this appeal fails to allege facts that give rise to a seizure under the Fourth Amendment. Accordingly, Officer Marshall is entitled to qualified immunity on this claim.

"Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a seizure has occurred." *Florida v. Bostick*, 501 U.S. 429, 434 (1991) (quoting *Terry v. Ohio*, 392 U.S. 1, 19 n.16 (1968)) (internal quotation marks omitted); *see also Berg v. Cnty. of Allegheny*, 219 F.3d 261, 269 (3d Cir. 2000) ("A person is seized for Fourth Amendment purposes only if he is detained by means intentionally applied to terminate his freedom of movement."). When a person claims that her liberty is restrained by an officer's "show of authority," a seizure does not occur unless she yields to that show of authority. *California v. Hodari D.*, 499 U.S. 621, 626 (1991); *United States v. Smith*, 575 F.3d 308, 313 (3d Cir. 2009). "[T]he test

for existence of a 'show of authority' is an objective one: not whether the citizen perceived that [s]he was being ordered to restrict [her] movement, but whether the officer's words and actions would have conveyed that to a reasonable person." *Hodari D.*, 499 U.S. at 628; *see also United States v. Brown*, 448 F.3d 239, 245 (3d Cir. 2006). We examine the totality of the circumstances in determining whether a seizure occurred. *Bostick*, 501 U.S. at 437; *United States v. Crandell*, 554 F.3d 79, 86 (3d Cir. 2009). Some factors indicative of a seizure include "the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled." *United States v. Mendenhall*, 446 U.S. 544, 554 (1980); *see also United States v. Drayton*, 536 U.S. 194, 204 (2002) (concluding that the defendant was not seized because "[t]here was no application of force, no intimidating movement, no overwhelming show of force, no brandishing of weapons, no blocking of exits, no threat, no command, not even an authoritative tone of voice").

Mrs. James does not claim that Officer Marshall used any physical force. Instead, she alleges that he made a show of authority. She asserts in the Complaint:

> 54. None-the-less [sic], the Wright Township Police officers insisted that at least one parent needed to travel with Nicole to the hospital.

> 55. Justifiably and reasonably believing herself to be compelled by law to do so in reliance upon the statements of the Wright Township Police officers, Cheryl agreed to accompany

> Nicole because she believed herself to be in less danger than Warren would be if he accompanied Nicole.

Compl. ¶¶ 54, 55.

These allegations are insufficient to establish a show of authority that rises to the level of a seizure under the Fourth Amendment. First, the officers' insistence that Mrs. James accompany her daughter to the hospital would not cause a reasonable person to feel powerless to decline the officers' request or otherwise terminate the encounter. *See Bostick*, 501 U.S. at 436. Indeed, the Supreme Court has repeatedly rejected the notion that a seizure occurs when an officer approaches a citizen to ask questions or make requests. *See, e.g.*, *Drayton*, 536 U.S. at 203–04 (no seizure when three officers boarded a bus and began questioning passengers); *Bostick*, 501 U.S. at 434–35 (no seizure when two officers approached a citizen on a bus and requested his consent to search his luggage); *Mendenhall*, 446 U.S. at 555 (no seizure when two DEA agents approached a citizen at an airport and requested identification and her airline ticket); *see also Crandall*, 554 F.3d at 84 ("The Supreme Court has made clear that a Fourth Amendment 'seizure does not occur simply because a police officer approaches an individual and asks a few questions.'" (quoting *Bostick*, 501 U.S. at 434)).

Mrs. James's assertion that she "justifiably and reasonably believ[ed] herself compelled by law" to comply with Officer Marshall's request does not alter our conclusion. In finding that Officer Marshall violated Mrs. James's constitutional rights, the District Court reasoned:

> [T]he complaint alleged that the police officers asserted their authority and compelled Cheryl James to accompany her daughter to the hospital. She alleges that she had no choice in the matter, and her freedom of movement was thereby intentionally terminated by the actions of the police . . . . If she can prove these facts to a jury, [she] could prevail on her claim.

*James*, 2012 WL 425236, at *3. By crediting these allegations, the District Court assumed that Mrs. James was "compelled" to accompany her daughter to the hospital. This was error because whether she was in fact "compelled" to do so is a legal conclusion. At the motion to dismiss stage, we accept as true all factual assertions, but we disregard threadbare recitals of the elements of a cause of action, legal conclusions, and conclusory statements. *See Iqbal*, 556 U.S. at 678–79; *Twombly*, 550 U.S. at 555–57; *Burtch*, 662 F.3d at 220–21. Although Mrs. James asks us to accept as fact her assertion that she "justifiably and reasonably believ[ed] herself compelled by law," in reality it is a legal conclusion artfully pleaded as a factual assertion, which is not entitled to a presumption of truth. *See Iqbal*, 556 U.S. at 678 ("Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" (quoting *Twombly*, 550 U.S. at 555)). As far as relevant factual averments go, the Complaint pleads only that the officers "insisted" that one parent accompany Nicole. As we have explained, insistence alone is insufficient to constitute a seizure under the Fourth Amendment.

10

Even if we were to consider Mrs. James's assertion that she felt compelled by law, she does not establish that a reasonable person would have felt she had no choice but to comply. *See Hodari D.*, 499 U.S. at 628; *Brown*, 448 F.3d at 245. As the Court of Appeals for the Seventh Circuit has persuasively explained, a seizure results from

> coercive pressure from state actors resulting in a *significant*, present disruption of the targeted person's freedom of movement. In our view, a seizure typically involves an almost complete restriction of movement—either a laying of hands or a close connection (both temporally and spatially) between the show of authority and the compliance (as when a police officer tells a suspect to get in the back of the squad car but declines to handcuff him).

*Kernats v. O'Sullivan*, 35 F.3d 1171, 1180 (7th Cir. 1994).

Although we acknowledge that intimidating police behavior might, under some circumstances, cause one to reasonably believe that compliance is compelled, the officers' actions in this case did not rise to that level. There are no allegations that the officers intimidated Mrs. James with a threatening presence, engaged in any physical touching, or displayed a weapon. *See Mendenhall*, 446 U.S. at 554. Nor did the officers order her to the police station for questioning or threaten to arrest her if she refused to accompany her daughter to the hospital. *See Hayes v. Florida*, 470 U.S. 811, 812–13, 816 (1985) (finding a Fourth Amendment seizure when police approached a citizen at his home, asked him to

11

accompany them to the police station for questioning, and threatened to arrest him when he initially refused).

The only fact that might point toward a seizure is Officer Marshall's threat that Mr. and Mrs. James would be charged with assisted manslaughter if they prevented Nicole from going to the hospital and she actually committed suicide. But that threat was not made in connection with Mrs. James's decision to accompany Nicole to the hospital; rather, it was made in the context of the parents agreeing to send Nicole to the hospital in the first place, which does not implicate a restriction on Mrs. James's freedom of movement.

Finally, we note that the facts alleged in the Complaint differ significantly from the circumstances present in the few cases we have located in which a seizure was found based on the alleged restraint of a plaintiff's freedom of movement by an official threat. *See, e.g.*, *White v. City of Markham*, 310 F.3d 989, 992, 995 (7th Cir. 2002) (seizure occurred when police officer placed hand on man's shoulder and told him that if he did not leave immediately, he would be arrested); *Cassady v. Tackett*, 938 F.2d 693, 694–96 (6th Cir. 1991) (seizure occurred when executive director of a multi-county jail barricaded herself in her office after the county jailer and his deputies, brandishing weapons, threatened to kill her and her husband). Tellingly, Mrs. James does not cite any case factually similar to hers in which a seizure was found.

For the reasons stated, we hold that Mrs. James was not seized in violation of the Fourth Amendment. Having found no constitutional violation, we hold that Officer Marshall is entitled to qualified immunity.

## C

Mrs. James also alleges that she was falsely imprisoned by Officer Marshall after she was forced to accompany her daughter to the hospital. In this regard, the Complaint alleges:

> 146. Wright Township Police Department officers intended that Plaintiff Cheryl James should accompany her daughter.
>
> 147. Wright Township Police used the force of their authority and threat of future arrest to compel Cheryl James to leave her home in an ambulance.
>
> 148. Cheryl James was thereafter confined and restrained to the ambulance.

Compl. ¶¶ 146–48.

To state a claim for false imprisonment, a plaintiff must establish: (1) that she was detained; and (2) that the detention was unlawful. *See Wallace v. Kato*, 549 U.S. 384, 389 (2007) ("The sort of unlawful detention remediable by the tort of false imprisonment is detention without legal process." (citations omitted) (emphasis deleted)). A false imprisonment claim under § 1983 which is based on an arrest made without probable cause, as Mrs. James alleges here, is grounded in the Fourth Amendment's guarantee against unreasonable seizures. *Groman*, 47 F.3d at 636.

As we have explained, Mrs. James has not pleaded that she was seized within the meaning of the Fourth Amendment. She was urged by officers to accompany her daughter in the ambulance, and she agreed to do so. She was free to leave at any time. Indeed, she does not allege that any Wright Township police officers accompanied her in the ambulance or even that they proceeded to the hospital separately. Accordingly, Mrs. James cannot show that she was falsely imprisoned. Therefore, the District Court erred when it failed to grant Officer Marshall qualified immunity on this claim as well.

IV

For the foregoing reasons, we will reverse the judgment of the District Court.