NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-2286
_____

JAMES MARTSOLF,
Appellant

v.

MAJOR LISA S. CHRISTIE; MAJOR CHARLES J. SKURKIS; MAJOR TERRY L.
SEILHAMER; CAPTAIN FRANCIS J. HACKEN; CAPTAIN SHELDON A. EPSTEIN;
CAPTAIN WILLIARD OLIPHANT; CAPTAIN BRADLEY D. ALLEN; CPL. LOUIS
M. REDA
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
District Court No. 2-12-cv-01018
District Judge: The Honorable Arthur J. Schwab

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
November 20, 2013

Before: AMBRO, SMITH, *Circuit Judges*
and O'CONNOR,* *Associate Justice (Ret.)*

(Filed: November 26, 2013)

_____

OPINION
_____

_____

* Sandra Day O'Connor, Associate Justice (Ret.) of the Supreme Court of the
United States, sitting by designation.

SMITH, *Circuit Judge*.

Appellant James Martsolf ("Sgt. Martsolf"), a Sergeant in the Pennsylvania State Police ("PSP"), appeals from the dismissal of his claims that Appellees violated the First and Fourteenth Amendments by: (1) retaliating against him for exercising his Right to Petition; (2) infringing his right to intimate association; and (3) violating his substantive due process rights. The United States District Court for the Western District of Pennsylvania dismissed Sgt. Martsolf's retaliation claim on the pleadings and disposed of his intimate association and substantive due process claims on summary judgment. The District Court had jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343, and we have jurisdiction under 28 U.S.C. § 1291. We review the District Court's rulings *de novo*. *James v. City of Wilkes-Barre*, 700 F.3d 675, 679 (3d Cir. 2012) (internal citation omitted); *Meditz v. City of Newark*, 658 F.3d 364, 369 (3d Cir. 2011) (internal citation omitted). For the reasons that follow, we will affirm.

I.

On July 19, 2010, in the Washington County PSP Station ("Washington Station"), Sgt. Martsolf made a comment to Corporal Luis Reda ("Cpl. Reda") regarding an ongoing Internal Affairs Division ("IAD") investigation. This IAD investigation involved allegations that another officer, Lieutenant Hermick (Lt. Hermick), had injured Cpl. Reda while allegedly giving him a bear-hug, an event that Sgt. Martsolf considered to be innocent horseplay. Sgt. Martsolf, allegedly as a joke, told Cpl. Reda that he should "call out to Harrisburg . . . and tell [IAD] to lift the restriction on Lieutenant Hermick

2

because this is bull shit." J.A. 244. Cpl. Reda apparently did not take this as a joke, and shortly thereafter emailed IAD to accuse Martsolf of intentionally attempting to interfere with the Lt. Hermick investigation.

Later that day, Captain Sheldon Epstein ("Capt. Epstein") placed Sgt. Martsolf on Restricted Duty Status and ordered him to "cease any and all contact and communication (including third party contact) with any and all Members of Washington Station whether on or off duty." Capt. Epstein also transferred Sgt. Martsolf to a different police station and ordered him not to enter the Washington Station for any reason. According to Sgt. Martsolf, these restrictions prevented him from posting a sign-up sheet in the Washington Station that would have allowed his coworkers to sign up to attend his wedding on August 14, 2010.

On July 29, 2010, Sgt. Martsolf sent correspondence to Major Lisa Christie to complain that the restrictions imposed on him were unnecessarily broad and violated his First Amendment rights. On August 13, 2010, a day before Sgt. Martsolf's wedding, Capt. Epstein granted him permission to contact personnel at the Washington Station. The next day, the wedding ceremony took place on the bride's family farm. Three of Sgt. Martsolf's coworkers helped with or participated in this ceremony.

A few weeks after the wedding—on September 1, 2010—Sgt. Martsolf was removed from Restricted Duty Status. On October 18, 2010, however, he was adjudicated guilty of interfering with an IAD investigation in a Disciplinary Action Report. On September 1, 2011, Sgt. Martsolf filed a grievance through his union, the Pennsylvania State Troopers Association ("PTSA"), which resulted in relief from the

3

PSP's disciplinary actions against him.

Sgt. Martsolf claims that the PSP's disciplinary actions were designed to retaliate against him for filing unfair labor practice grievances and a federal civil rights lawsuit against them in the past. One of these unfair labor practice grievances appears to have been filed in 2009 by the PTSA on his behalf and to have alleged that Major Terry Seilhammner (Maj. Seilhammner) unlawfully retaliated against Sgt. Martsolf by imposing a rule that anyone with a rank higher than corporal was no longer allowed to work overtime in a construction zone. The nature of the other unfair labor practice grievances is unclear from the complaint and the record.[1] The federal civil rights lawsuit, which was filed jointly by Sgt. Martsolf and his ex-wife, alleged that his ex-wife, then a PSP employee, was sexually harassed, and that the PSP had unlawfully retaliated against Sgt. Martsolf for this and other grievances he and his wife had filed. *Martsolf v. Brown*, No. 1:05-cv-1941, 2008 WL 112028 (M.D. Pa. Jan. 9, 2008).

## II.

We hold that the District Court did not err by dismissing Sgt. Martsolf's retaliation

4

claim on the pleadings. In order to state a prima facie case of retaliation, Sgt. Martsolf needed to allege, *inter alia*, that he engaged in an activity protected by the First Amendment. *Hill v. Borough of Kutztown*, 455 F.3d 225, 241 (3d Cir. 2006). He argues that his various grievances were protected under the First Amendment Right to Petition, which "protects the right of individuals to appeal to courts and other forums established by the government for resolution of legal disputes" without fear of retaliation. *See Borough of Duryea v. Guarnieri*, 131 S.Ct. 2488, 2494 (2011). The Supreme Court, however, has held that petitioning activity is only constitutionally protected if it addresses a matter of public concern. *Id.* at 2491-92. In this case, the District Court correctly concluded that Sgt. Martsolf's alleged petitioning activity, to the extent it was coherently described, related to "private employment disputes, rather than petitions filed in an effort to advance a political or social point of view beyond the employment context." J.A. 28

---

[1] Sgt. Martsolf's complaint explains simply that he had "carr[ied] on litigation against the PSP and PSP officers," J.A. 37, and "brought actions against a number of the defendants and other officials within the PSP." J.A. 43. Sgt. Martsolf's deposition testimony indicates that he filed "maybe three [or] four" grievances against the PSP prior to the incident in 2010. J.A. 95. At one point Sgt. Martsolf seemed to describe one of these grievances as challenging Sgt. Martsolf's restricted duty status in 2010 (i.e., the alleged retaliatory conduct), *see* J.A. 89-93, which of course would be putting the cart before the horse. Sgt. Martsolf was interrupted by his attorney, Don Bailey, who asserted that the grievance was not related to his restricted duty status, but rather "what Seilhamer [sic] did as a regional commander." *Id.* at 93. "[W]hat Seilhamer [sic] did" to trigger the grievance, however, is never explained. *Id.*

5

(internal quotation marks and citation omitted).[2] Accordingly, dismissal of this claim was appropriate.

We also hold that the District Court did not err in granting summary judgment against Sgt. Martsolf on his intimate association claim. The constitutional right to intimate association attaches only to "certain kinds of highly personal relationships" and affords these relationships "a substantial measure of sanctuary from unjustified interference by the State." *Roberts v. United States Jaycees*, 468 U.S. 609, 618 (1983). The relationships that receive this protection "presuppose deep attachments and commitment to the necessarily few other individuals with whom one shares not only a special community of thought, experiences, and beliefs, but also distinctively personal aspects of one's life." *Board of Directors of Rotary Intern. v. Rotary Club of Duarte*, 481 U.S. 537, 545 (1987) (internal citation omitted). Sgt. Martsolf claims that his relationships with his "longtime friends and colleagues" at Washington Station were unlawfully interfered with when he was unable to communicate with them until the day before his wedding. J.A. 237. We agree with the District Court's conclusion that these relationships "undoubtedly fall outside the scope of the protections" of his right to intimate association. J.A. 19; *see also Pi Lambda Phi Fraternity, Inc. v. Univ. of*

---

[2] We note, however, that the District Court's additional conclusion that *marriage* is not a matter of public concern is irrelevant to this analysis. In a First Amendment retaliation claim, the "public concern" inquiry relates to the nature of the protected activity, not the nature of the retaliation. *See Guarnieri*, 131 S.Ct. at 129. Because Sgt. Martsolf's petitioning activity—the filing of grievances and a lawsuit against the PSP—did not involve marriage, it was unnecessary to decide whether marriage is an issue of public concern.

*Pittsburgh*, 229 F.3d 435, 442 (3d Cir. 2000) (concluding that the relationships between fraternity brothers were not protected by the right of intimate association). Accordingly, dismissal of this claim was appropriate.

We also agree with the District Court that Sgt. Martsolf has not advanced a colorable substantive due process claim distinct from the intimate association claim just discussed, which he framed as a substantive due process violation.[3]

\* \* \*

Accordingly, we will affirm the judgment of the District Court.

---

[3] The District Court appears to have analyzed Sgt. Martsolf's intimate association claim as a First Amendment claim, *see* J.A. 19 ("Plaintiff's wedding reception was neither an 'expressive' or an 'intimate' association entitled to the protections of the First Amendment"), but later notes that "[Martsolf's] substantive due process claim arises directly from the alleged violation of his right to freedom of association." J.A. 21. We take no position here on whether the right to intimate association stems from the First Amendment, the Fourteenth Amendment, or both, but note simply that Sgt. Martsolf has framed his intimate association claim in terms of substantive due process, and does not advance any other substantive due process argument that needs to be addressed. *See* J.A. 44 (claiming that defendants "violated [his] 14th Amendment substantive due process rights interfering with [sic] his familial relationships and private personal family affairs").