**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————————

No. 15-2942

———————————

DAVID JANKOWSKI,
Appellant

v.

ROBERT LELLOCK;
LYNN MEYERS-JEFFREY;
RONALD ZANGARO

———————————

On Appeal from the United States District Court
for the Western District of Pennsylvania
District Court No. 2-13-cv-00194
District Judge: The Honorable Terrence F. McVerry

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
May 19, 2016

Before: SMITH, HARDIMAN, and SHWARTZ, *Circuit Judges*

(Opinion Filed:  May 20, 2016)

———————————

OPINION*

———————————

* This disposition is not an opinion of the full court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

SMITH, *Circuit Judge.*

Plaintiff David Jankowski alleges that Defendant Robert Lellock, a former Arthur J. Rooney Middle School Police Officer, sexually abused Jankowski on multiple occasions. The question in this appeal, however, is whether Jankowski has alleged facts sufficient to make out a claim for relief against Defendants Lynn Meyers-Jeffrey and Ronald Zangaro, the detention aide and the school principal, respectively, at Rooney Middle School. Jankowski alleges that both individuals knew or should have known that Lellock was pulling students out of class for one-on-one meetings. He then concludes that both individuals knew or should have known Lellock was abusing these students. Jankowski, however, has failed to plead any facts supporting this inference. He has thus failed to make out a viable cause of action against either Meyers-Jeffrey or Zangaro, despite having had three opportunities to do so. We therefore hold that the District Court did not err in dismissing the claims against both Meyers-Jeffrey and Zangaro and will affirm the District Court's judgment.

## I.

Starting in the fall of 1998 and lasting until May 1999,[1] Lellock, at the time a School Police Officer employed by the Pittsburgh Public Schools, allegedly abused up to twenty-two male students at Rooney Middle School. Jankowski was

one of Lellock's victims. Jankowski alleges that on multiple occasions during the 1998-1999 school year, Lellock removed him from Meyers-Jeffrey's study hall/detention classroom, took him to a supply closet, and sexually violated him.

While criminal charges against Lellock also resulted, Jankowski brought this lawsuit under 42 U.S.C. § 1983. Jankowski claims that Lellock violated his right to bodily integrity, which is secured by the Due Process Clause of the Fourteenth Amendment and enforced through § 1983. Jankowski's original complaint named as defendants the Pittsburgh Public Schools and eighteen individuals (including Lellock, Meyers-Jeffrey, and Zangaro) who were connected in various ways with Rooney Middle School. However, after his first two complaints were dismissed in part for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), Jankowski amended his complaint to sue only three individuals: Lellock, Meyers-Jeffrey, and Zangaro.

Meyers-Jeffrey was a detention aide at Rooney Middle School for the 1998-1999 school year and it was from her classroom that Jankowski alleges he was pulled by Lellock on multiple occasions over the course of the school year. Jankowski also alleges that Lellock pulled up to twenty-one other boys from Meyers-Jeffrey's classroom over the course of the year, explaining to her that he needed to speak to the student or that the student was "in trouble again." This was,

---

[1] The second amended complaint does not give specific dates or date ranges.

according to Jankowski, a violation of district policy.

Zangaro was the principal of Rooney Middle School, and Jankowski alleges that he knew that Lellock was removing students from class for one-on-one meetings, yet failed to do anything to stop it. In addition to alleging supervisory liability, Jankowski alleges that Zangaro failed to properly train his staff on the district's policy prohibiting anyone from pulling students from classrooms.

After considering Jankowski's second amended complaint, however, the District Court again dismissed the claims against everyone except Lellock, explaining that Jankowski had not carried his burden of pleading facts sufficient to suggest liability on the part of anyone besides Lellock. While this dismissal was initially an interlocutory order because the claims against Lellock were still pending, the District Court later granted Jankowski's Rule 54(b) motion to convert the order into a final decision, thus permitting immediate appeal. Accordingly, on August 12, 2015, Jankowski appealed the District Court's order holding that his second amended complaint failed to plead a cause of action against Meyers-Jeffrey and Zangaro.

## II.

"We review a district court's decision granting a motion to dismiss under a plenary standard." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 206 (3d Cir. 2009). A motion to dismiss pursuant to Rule 12(b)(6) challenges the legal sufficiency of a

4

complaint, which may be dismissed for the "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When considering a motion to dismiss, we take a three-step approach:

> First, the court must take note of the elements a plaintiff must plead to state a claim. Second, the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Finally, where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.

*Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011) (quoting *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010) (internal citations and quotation marks omitted)). Regarding factual allegations, as the Supreme Court made clear in *Bell Atlantic Corp. v. Twombly*, such allegations "must be enough to raise a right to relief above the speculative level." 550 U.S. 544, 555 (2007). We have further held that when performing this analysis, we "accept the factual allegations contained in the Complaint as true, but we disregard rote recitals of the elements of a cause of action, legal conclusions, and mere conclusory statements." *James v. City of Wilkes-Barre*, 700 F.3d 675, 679 (3d Cir. 2012) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009); *Twombly*, 550 U.S. at 555-57; *Burtch*, 662 F.3d at 220-21).

Thus, in order for Jankowski's complaint to survive a motion to dismiss, it must allege facts that, if true, suggest a plausible entitlement to relief against Meyers-Jeffrey and Zangaro. *See Iqbal*, 556 U.S. at 678 ("A claim has facial

5

plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

The District Court assumed for the purpose of deciding the motion to dismiss that Jankowski made out a claim against Lellock for violation of his right to bodily integrity. That said, it is clearly established that government officials are liable only for their own unconstitutional conduct, and cannot "be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*." *Bistrian v. Levi*, 696 F.3d 352, 366 (3d Cir. 2012) (quoting *Iqbal*, 556 U.S. at 676). We must, therefore, look at each defendant's own actions as alleged in the complaint.

In this regard, Jankowski does not claim that either Meyers-Jeffrey or Zangaro actively encouraged or participated in the illegal conduct of Lellock; instead he attempts to show that both Meyers-Jeffrey and Zangaro knew or should have known about Lellock's actions and did nothing. Section 1983 liability attaches only if there is either a supervisor-subordinate relationship or a state law duty to control the actions of the primary actor. *C.H. ex rel. Z.H. v. Oliva*, 226 F.3d 198, 201 (3d Cir. 2000) ("It is, of course, well established that a defendant in a civil rights case cannot be held responsible for a constitutional violation which he or she neither participated in nor approved."); *Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1294 (3d Cir. 1997), *overruled on other grounds by Burlington N. &*

*Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006) ("[E]xcept perhaps in unusual circumstances, a government official or employee who lacks supervisory authority over the person who commits a constitutional tort cannot be held, based on mere inaction, to have 'acquiesced' in the unconstitutional conduct.").

Once this supervisory relationship is established, we have articulated two ways in which a supervisor may be liable for unconstitutional actions undertaken by a subordinate. First, liability may attach if the supervisor, "'with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm.'" *A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (alteration in original) (quoting *Stoneking v. Bradford Area Sch. Dist.*, 882 F.2d 720, 725 (3d Cir. 1989)). This standard encompasses Jankowski's failure to train claim, and specifically requires (1) deliberate indifference and (2) direct causation. *Black by Black v. Indiana Area Sch. Dist.*, 985 F.2d 707, 712-13 (3d Cir. 1993).

Second, at least prior to *Iqbal*, "a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced" in the subordinate's unconstitutional conduct. *A.M. ex rel. J.M.K.*, 372 F.3d at 586 (citing *Baker v. Monroe Twp.*, 50 F.3d 1186, 1190-91 (3d Cir. 1995)). Or, put another way,

[A] plaintiff asserting a failure to supervise claim must not only identify a specific supervisory practice that the defendant failed to employ, he or she must also allege both (1) contemporaneous knowledge of the offending incident or knowledge of a prior pattern of similar incidents, and (2) circumstances under which the supervisor's inaction could be found to have communicated a message of approval.

*Oliva*, 226 F.3d at 202 (internal citations and quotation marks omitted). "[W]e have refrained from answering the question of whether *Iqbal* eliminated—or at least narrowed the scope of—supervisory liability because it was ultimately unnecessary to do so in order to dispose of the appeal then before us." *Argueta v. U.S. Imm. and Customs Enforcement*, 643 F.3d 60, 70 (3d Cir. 2011). As in *Argueta*, we "make the same choice here because we determine that [Jankowski] failed to allege a plausible claim to relief on the basis of the supervisors' 'knowledge and acquiescence' or any other similar theory of liability." *Id.*

### III.

Applying this legal framework to the facts in Jankowski's second amended complaint convinces us that the District Court correctly dismissed the claims against both Meyers-Jeffrey and Zangaro. First, Jankowski never alleges that either Meyers-Jeffrey, who was merely an aide in the detention classroom, or

8

Zangaro had any supervisory or actual authority[2] over Lellock, thus immediately casting serious doubt on both claims. Second, Jankowski's second amended complaint, stripped of its conclusory allegations, pleads very few facts, none of which transform his claims into anything more than pure speculation. This is so because Jankowski relies primarily on the strength of an inference that we believe is unreasonable. He argues that because Lellock (1) pulled approximately twenty-two male students out of detention over the course of the school year to talk to them individually and (2) did so in apparent violation of a district policy forbidding the removal of students from a classroom, it was "obvious" that Lellock was intending to have "private one-on-one encounters with those male students." Thus, he concludes that Meyers-Jeffrey and Zangaro knew or should have known that Lellock was sexually abusing these students.

We cannot agree with Jankowski that this final inference is reasonable in light of the facts alleged. Assuming that either or both individuals did have actual

---

[2] While, presumably, a school principal has some authority over the school's police officer, Jankowski's second amended complaint never alleges that Zangaro had either supervisory or actual authority over Lellock. Indeed, the only reference to Lellock's employment status is that he was an employee of the Pittsburgh Public Schools, perhaps casting doubt on Zangaro's authority to control the actions of Lellock if we infer that he was also supervised at the district level. *See generally* Mercedes J. Howze, *Pittsburgh Public Schools names new Chief of School Safety*, New Pittsburgh Courier (June 5, 2015), http://newpittsburghcourieronline.com/2015/06/05/pittsburgh-public-schools-names-new-police-chief/.

authority over Lellock, supervisory liability still requires a plaintiff to show that the supervisor knew about and acquiesced in the subordinate's unconstitutional conduct. *A.M. ex rel. J.M.K.*, 372 F.3d at 586. Jankowski has not met this standard for either Meyers-Jeffrey or Zangaro. Mere knowledge that students are being pulled from class to speak with a school police officer in violation of a district policy does not lead one to reasonably conclude that those students are then being sexually assaulted by that officer. The facts alleged, therefore, do not support the claim that either Meyers-Jeffrey or Zangaro actually knew about Lellock's conduct during the 1998-1999 school year. *See Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level."). Thus, we hold that both claims of supervisory liability were properly dismissed by the District Court.

Turning to Jankowski's failure to train claim, we conclude that this allegation fares no better. The entire claim is relegated to a single sentence in the complaint, which simply states that Zangaro "failed to properly train the teachers at the Arthur J. Rooney Middle School during the school year 1998 and 1999 school year [sic] . . . regarding the School District policy that forbade school police from removing children from classrooms for private, unsupervised encounters." This is merely a rote recitation of a cause of action coupled with a legal conclusion. *City of Wilkes-Barre*, 700 F.3d at 679 ("[W]e disregard rote recitals of the elements of a

10

cause of action, legal conclusions, and mere conclusory statements."). It does not contain *any* facts on which we can or should rely. We therefore conclude that this claim was also properly dismissed by the District Court.[3]

## IV.

For the reasons discussed above, we will affirm the District Court's judgment in favor of Meyers-Jeffrey and Zangaro.

---

[3] Indeed, even if Jankowski had shown a failure to train, he presents no facts suggesting such a failure would have been anything more than mere negligence; far short of the high "deliberate indifference" standard he also had to satisfy. *See Black by Black v. Indiana Area Sch. Dist.*, 985 F.2d 707, 713 (3d Cir. 1993).