**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 20-3038
_____

DR. DARREN JAMES,
Appellant

v.

NEW JERSEY DEPARTMENT OF HEALTH AND SENIOR SERVICES; MS.
KATHLEEN BENNETT, former Commissioner of the New Jersey Department of Health
and Senior Services; MS. SUE CARSON, the director of the Department of Health and
Senior Services, medical marijuana program

_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil Action No. 3:18-cv-10461)
District Judge:  Honorable Brian R. Martinotti

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
April 18, 2022
Before:  GREENAWAY, JR., PORTER and NYGAARD, Circuit Judges

(Opinion filed: May 18, 2022)
_____

OPINION[*]
_____

**PER CURIAM**

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

Pro se appellant Dr. Darren James appeals from the District Court's judgment granting the appellees' motion to dismiss, denying his motion to amend, and dismissing the complaint with prejudice. For the reasons that follow, we will affirm the District Court's judgment.

In 2018, Dr. James filed suit against the New Jersey Department of Health and Senior Services, its former commissioner Kathleen Bennett, and the director of the Medical Marijuana Program (MMP), Sue Carson. Dr. James, who is blind, alleged that he was disqualified from participating in the program as a referring physician because of his disability. He filed claims alleging discrimination under several state and federal laws, including the Americans with Disabilities Act (ADA), the Rehabilitation Act (RA), and the New Jersey Law Against Discrimination (NJLAD); violations of his civil rights under the United States Constitution; breach of contract under state law; and various tort claims including defamation, criminal slander, and fraudulent concealment. He also sought release of documents under the Freedom of Information Act (FOIA) and the New Jersey Open Public Records Act (OPRA). After the defendants filed a motion to dismiss the complaint, the District Court allowed Dr. James to amend his complaint twice. The defendants filed a motion to dismiss the second amended complaint under Rule 12(b)(6). Dr. James moved to amend his complaint a third time.

In September 2020, the District Court granted the defendants' motion to dismiss. The Court found that Dr. James failed to make a prima facie showing of disability discrimination because, as a Doctor of Podiatric Medicine (D.P.M.), he did not qualify for participation in the program. The District Court also found that the state defendants

are not "persons" for purposes of § 1983, and that the individual defendants are entitled to qualified immunity from claims asserted against them in their personal capacities because Dr. James failed to state a constitutional violation. The District Court also rejected the contract and tort claims, as well as the document requests. Finally, the District Court denied Dr. James's motion to amend his complaint for a third time because amendment would be futile. Dr. James filed this timely appeal.

We review the district court's decision to dismiss the second amended complaint de novo. See Klotz v. Celentano Stadtmauer & Walentowicz LLP, 991 F.3d 458, 462 (3d Cir. 2021). We consider the District Court's denial of the motion for leave to amend for an abuse of discretion, but we review the conclusion that amendment would be futile under a de novo standard. U.S. ex rel. Schumann v. Astrazeneca Pharm. L.P., 769 F.3d 837, 849 (3d Cir. 2014).

In his second amended complaint, Dr. James tried to assert the defendants' liability for discrimination by relying on a multitude of civil and criminal statutes.[1] On appeal, however, he chiefly takes issue with the District Court's determination that he failed to state a claim under the ADA, RA, and NJLAD.[2] To survive a motion to dismiss, Dr. James had to plead sufficient facts "to raise a reasonable expectation that discovery

---

[1] Dr. James relied on the ADA, the RA, Titles VI and VII of the Civil Rights Act, the NJLAD, the New Jersey Civil Rights Act (NJCRA), and 18 U.S.C. §§ 242, 245.

[2] We apply the same ADA analysis for Dr. James's claims under all three statutes. See Fowler v. AT & T, Inc., 19 F.4th 292, 298 (3d Cir. 2021) ("New Jersey law generally tracks the relevant federal statutes"); Chisolm v. McManimon, 275 F.3d 315, 324 n.9 (3d Cir. 2001) (ADA principles apply to claims under the RA and NJLAD).

3

w[ould] reveal evidence of" the elements for discrimination, e.g., that he: (1) is a disabled person under the ADA; (2) is "a qualified individual;" and (3) has suffered an adverse employment action as a consequence of the disability. See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007) (explaining standard for pleading sufficiency); McNelis v. Pa. Power & Light Co., 867 F.3d 411, 414 (3d Cir. 2017) (outlining necessary elements for ADA discrimination claim).[3] The District Court concluded that Dr. James failed to show that he was a "qualified individual," which we have previously defined as one who meets "the prerequisites for the position, such as possessing the appropriate educational background, employment experience, skills, licenses, etc.," and is able to "perform the essential functions of the position," either "with or without reasonable accommodation." Id. at 415 (citation omitted).

We agree that Dr. James has not alleged a claim upon which relief may be granted because he did not have the qualifications to participate in the MMP as a prescribing physician. The applicable statute for the MMP defined "physician" as:

> a person licensed to practice *medicine and surgery* pursuant to Title 45 of the Revised Statutes with whom the patient has a bona fide physician-patient relationship and who is the primary care physician, hospice physician, or physician responsible for the ongoing treatment of a patient's debilitating medical condition, provided, however, that the ongoing treatment shall not be limited to

---

[3] The District Court stated that Dr. James had not demonstrated a prima facie case for discrimination. D. Ct. Opinion at 7. However, we have explained that the prima facie case standard is one of evidentiary sufficiency, not a pleading requirement. Connelly v. Lane Const. Corp., 809 F.3d 780, 788-89 (3d Cir. 2016). After our plenary review of the discrimination claims, we are nevertheless satisfied that Dr. James did not meet the standard to survive a motion to dismiss because he failed to plead sufficient facts to raise a reasonable expectation that discovery would provide evidence that he was a qualified individual. See id. at 789; McNelis, 867 F.3d at 415.

the provision of authorization for a patient to use medical marijuana or consultation solely for that purpose.

N.J. Stat. Ann. 24:6I-3 (2012) (emphasis added). And, in Title 45, Chapter 9, entitled "Medicine and Surgery," a "physician" is defined as a "person licensed or permitted to practice medicine or surgery in this State." N.J. Stat. Ann. § 45:9-27.5. But Dr. James's podiatry practice is regulated through a different chapter of Title 45 for "Podiatric Medicine." See N.J. Stat. Ann. § 45:5-1 et. seq. Under the terms of Chapter 5, a podiatrist is considered "a physician within the scope of this chapter, and may be referred to as a podiatric physician." Id. § 5-7. The statute for the MMP did not include "podiatric physicians" in its definition of authorized prescribing physicians.

Dr. James argues that he had previously participated as a prescribing physician in the MMP, and he contends that the state's explanation that he failed to qualify under the statute was just a pretext to discriminate against him based on his disability. But, by his own admission, Dr. James is a podiatrist—a D.P.M.—and not a medical doctor (M.D.). Despite his arguments to the contrary, the fact that he previously was able to register online for the MMP as a "medical doctor" even though he was not one did not somehow confer qualified status under the program. Absent Dr. James's ability to credibly allege that discovery might reveal that he was qualified to participate in the MMP, the discrimination claims were properly dismissed. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (explaining that a complaint must have sufficient facts to state a claim "that is plausible on its face").[4]

---

[4] Dr. James argues on appeal that the District Court used a newer version of the MMP

Next, Dr. James challenges the District Court's ruling that defendants Bennett and Carson are entitled to qualified immunity with respect to Dr. James's Constitutional Due Process claims. See Appellant's Br. at 4; D. Ct. Op. at 8-10. But even accepting Dr. James's allegations as true and drawing all inferences in his favor, see George v. Rehiel, 738 F.3d 562, 571 (3d Cir. 2013), we agree with the District Court that the defendants are entitled to qualified immunity. See James v. City of Wilkes-Barre, 700 F.3d 675, 679 (3d Cir. 2012) (explaining that a district court's denial of qualified immunity at the motion to dismiss stage is "a pure question of law"). As the District Court pointed out, Dr. James's complaint failed to allege a violation of his due process rights because he admittedly did not take advantage of the process available to him. D. Ct. Op. at 10; see also Pearson v. Callahan, 555 U.S. 223, 232 (2009) (government official protected from liability under qualified immunity unless the facts alleged show the violation of a clearly established constitutional right of which a reasonable person would have known); Alvin v. Suzuki, 227 F.3d 107, 116 (3d Cir. 2000) (in order to state a claim for due process deprivation, a plaintiff must avail themselves of the process available unless inadequate or unavailable). We have no doubt that the remedy under New Jersey Court Rule 2:2-3(a) was adequate, and, because he did not avail himself of the process available, no due process violation occurred. Accordingly, qualified immunity was appropriate.

---

law to conclude that he did not qualify as a prescribing physician under the act. See Appellant's Br. at 3, 7. But, as explained above, since its inception the statute explicitly referred to "physicians licensed to practice medicine and surgery" pursuant to Title 45 and never included "podiatrists" defined under Title 45. (Medical doctors with a podiatry specialty apparently were allowed to participate in the program.)

On appeal, Dr. James does not meaningfully challenge the District Court's dismissal of the balance of his claims in the second amended complaint. See Geness v. Cox, 902 F.3d 344, 355 (3d Cir. 2018) ("[I]t is well settled that a passing reference to an issue will not suffice to bring that issue before this court." (internal quotation marks omitted)). In any event, we would affirm their dismissal for the reasons provided by the District Court.

Finally, Dr. James argues that the District Court erred by denying his motion to file a third amended complaint. To the extent that Dr. James attempted to cure the defects of his second amended complaint, we agree with the District Court that the proposed third amended complaint did not cure the pleading deficiencies of the second amended complaint; thus, any further amendment would be futile. See Jablonski v. Pan Am. World Airways, Inc., 863 F.2d 289, 292 (3d Cir. 1988) (explaining that "[a]mendment of the complaint is futile if the amendment will not cure the deficiency in the original complaint or if the amended complaint cannot withstand a renewed motion to dismiss").[5] We note that, in the proposed pleading, Dr. James also sought to add additional defendants and raise new allegations of retaliation with respect to the suspension of his license to practice podiatry. See Garrett v. Wexford Heath, 938 F.3d 69, 82 (3d Cir. 2019) (explaining that a supplemental pleading under Fed. R. Civ. P.

---

[5] To the extent that Dr. James attempted to comply with the New Jersey Tort Claims Act for the defamation claim in his proposed amended complaint, the District Court would not exercise supplemental jurisdiction over it when the rest of the claims have been dismissed, including those over which the court could exercise subject matter jurisdiction.

15(d) presents more recent events that occurred since the pleading was filed, as opposed to an amended pleading, which adds additional events that occurred before the pleading was filed). But we find that the proposed pleading did not contain sufficient facts to state a claim of relief for retaliation that would be plausible on its face. See Twombly, 550 U.S. at 570; Murray v. Bledsoe, 650 F.3d 246, 247 (3d Cir. 2011) (per curiam) (explaining that the court may affirm "on any basis supported by the record").[6] The District Court did not abuse its discretion by denying the motion. See Astrazeneca, 769 F.3d at 849.

Accordingly, we will affirm the judgment of the District Court.

---

[6] To plead retaliation under the First Amendment, a plaintiff must allege: "(1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the constitutionally protected conduct and the retaliatory action." Thomas v. Independence Tp., 463 F.3d 285, 296 (3d Cir. 2006). Dr. James alleged that the defendants retaliated against him for appearing on a television program in which he stated that he was a blind podiatrist, for filing complaints with the U.S. Department of Justice and the New Jersey Division on Civil Rights, and for filing this lawsuit. See ECF No. 66-1 at 33. The State Board of Medical Examiners ordered Dr. James's license to be suspended in November 2019 because Dr. James failed to comply with a previously agreed-to assessment of skills pursuant to a consent order entered during the Board's investigation of his ability to safely practice podiatry. See ECF No. 66-3 at 66-67. Here, Dr. James failed to sufficiently allege a causal link between any protected conduct and the actions taken by the Board to revoke his license, and there is no basis for a reasonable inference that the defendants are liable. Iqbal, 556 U.S. at 678. He admitted signing the consent order, which included a provision that the failure to timely obtain assessment of skills would be grounds for immediate suspension of his license. See ECF No. 66-3 at 66. While he provides a litany of reasons for why he did not comply with the consent order, none allege actionable conduct by the defendants, and Dr. James cannot avoid the fact that his own actions (or inactions) precipitated the suspension of his license.

8