

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

1-17-2006

# Bullock v. Dressel

Precedential or Non-Precedential: Precedential

Docket No. 05-1573

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"Bullock v. Dressel" (2006). *2006 Decisions*. Paper 1674.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/1674

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Precedential

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 05-1573

———

JAMES C. BULLOCK; JAMES UMBENHAUER;
CHARLES L. VOORHIES; RICKEY WARD,
Appellants

v.

RICHARD DRESSEL; INTERNATIONAL
BROTHERHOOD OF ELECTRICAL
WORKERS LOCAL UNION NO. 164

———

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
(D.C. Civil No. 02-cv-02758)
District Judge:  The Honorable Dennis M. Cavanaugh

———

Argued:  November 16, 2005

———

Before: BARRY and AMBRO, <u>Circuit Judges</u>, and POLLAK,[*]
<u>District Judge</u>

———

(Opinion Filed: January 17, 2006)

———

———

[*]The Honorable Louis H. Pollak, District Judge, United States District Court for the Eastern District of Pennsylvania, sitting by designation.

George P. Fisher, Esq. (ARGUED)
3635 South West Dosch Road
Portland, OR 97239

John A. Stone, Esq.
Edwards & Caldwell
1600 Route 208 North
P.O. Box 23
Hawthorne, NJ 07507

Counsel for Appellants


Gary A. Carlson, Esq. (ARGUED)
Kroll Heineman Giblin
99 Wood Avenue South
Metro Corporate Campus 1
Suite 307
Iselin, NJ 08830

Counsel for Appellees

---

OPINION OF THE COURT

---

BARRY, Circuit Judge

The District Court granted defendant Local 164's motion for summary judgment on plaintiffs' claim under § 101(a)(5) of the Labor Management Reporting and Disclosure Act of 1959 ("LMRDA"), 29 U.S.C. § 411(a)(5), their claim for breach of the duty of fair representation, and their state law defamation claims. Plaintiffs, now appellants herein, are four members of other local unions under the umbrella of the International Brotherhood of Electrical Workers ("IBEW") who worked as "travelers" at Local 164. The District Court had jurisdiction over the federal claims pursuant to 28 U.S.C. § 1331, and supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367. We have appellate jurisdiction under 28 U.S.C. § 1291.

We will affirm in part and reverse in part.

Because we have before us only issues of law, we will set forth only those facts necessary to inform decision on the legal issues. In March 2001, Local 164 referred appellants to work for Guzzo Electric at a project at Newark Liberty International Airport. On June 5, after experiencing problems with both Local 164 and Guzzo, appellants and twenty-six of their fellow "travelers" working at the project signed a letter addressed to Lawrence E. Rossa, the Vice-President for IBEW's third district, which encompasses Local 164. In that letter (the "Travelers' letter"), the thirty men expressed their concerns regarding (1) Guzzo's late payment of the workers' benefit contributions; (2) late payments on scheduled pay days; and (3) Local 164's refusal to provide the workers a copy of the collective bargaining agreement.

Rossa received the letter on June 6, 2001 and sent a copy to appellee Richard Dressel, who, as business manager, was responsible for the daily operation of Local 164, including its hiring hall. Dressel responded on June 7, 2001 with an angry letter to the business managers of the local unions where the thirty men were members. In that letter, Dressel first threatened that if any of the thirty men who signed the Travelers' letter quit the Guzzo job, "they will not be referred again from 164 . . . ." Second, "if they do quit," Dressel wrote, "I will fax their names and card numbers to all my sister locals in New Jersey and southern New York and Local 3." Third, Dressel stated that their "actions have now forced me to suspend the referral for ALL traveling Brothers of the IBEW for at least a one month period . . . I will not allow this situation to get out of hand whereby a few trouble makers are attempting to have the 'tail wag the dog'." (App. 750-51.) Finally, Dressel told the business managers, "[p]lease do me a favor. Keep your problem members at home and deal with them. These 'Brothers' are not welcomed here." (App. 750-51.) Attached to this letter was a list of the names and IBEW membership numbers of each signatory to the Travelers' letter.

Appellants claim that Dressel's letter became generally available at their workplace and that they faced hostility from

3

other union members. Additionally, they point out that Local 164's records show the number of its hiring hall's job referrals of travelers dropped off markedly during the month after Dressel's letter. Appellants claim that Local 164 and Dressel engaged in improper discipline in violation of § 101(a)(5) of the Labor Management Reporting and Disclosure Act of 1959 ("LMRDA"), 29 U.S.C. § 411(a)(5), by doing what was threatened in the Dressel letter in retaliation for their letter and by blacklisting them. They claim, as well, that they were defamed by the Dressel letter.

## I. **LMRDA § 101(a)(5) Claim**

> Section 101(a)(5) of the LMRDA states that [n]o member of any labor organization may be fined, suspended, expelled, or *otherwise disciplined* except for nonpayment of dues by such organization or by any officer thereof unless such member has been (A) served with written specific charges; (B) given a reasonable time to prepare his defense; (C) afforded a full and fair hearing.

29 U.S.C. § 411(a)(5) (emphasis added).

The District Court concluded that Dressel and Local 164 did not violate § 101(a)(5) because the Act is only implicated by discipline authorized by the union and the Dressel letter "amounts to no more than a threat of ad hoc retaliation by a union officer who was upset with the manner in which the travelers dealt with their grievances" (App. 10). We agree.

In *Breininger v. Sheet Metal Workers Int'l Ass'n Local Union No. 6*, 493 U.S. 67, 91 (1989), the Supreme Court defined "otherwise disciplined" narrowly to encompass "only punishment authorized by the union as a collective entity to enforce its rules," and not any "act[] that deter[s] the exercise of rights protected under the LMRDA." The Court noted that because "otherwise disciplined" immediately succeeds an enumerated list of punishments that "imply some sort of established disciplinary process,"—namely, fines, suspension and expulsion—"Congress meant 'discipline' to signify penalties

4

applied by the union in its official capacity rather than ad hoc retaliation by individual union officers." *Id.* at 91-92 & 92 n.15. Additionally, the Court pointed out that by its terms § 101(a)(5) provides procedural due process protections (such as a "full and fair hearing") that are intended to "safeguard [ ] against *improper* disciplinary action," and that "would not apply to instances of unofficial, *sub rosa* discrimination." *Id*. at 92 (first emphasis added).

The petitioner in *Breininger* claimed that his local violated § 101(a)(5) because its business manager and business agent refused to refer him for employment due to his political support for one of their rivals. The Court held that he had failed to "allege acts by the union amounting to 'discipline'" since he "was not punished by any tribunal, nor was he the subject of any proceedings convened by [the union]." *Id.* at 94. Instead, he only claimed to be "the victim of the personal vendettas of two union officers," and, thus, § 105(a)(5) was not implicated. *Id.*

> We do not imply that "discipline" may be defined solely by the type of punishment involved, or that a union might be able to circumvent []§ 101(a)(5) . . . by developing novel forms of penalties different from fines suspensions, or expulsions. Even respondent acknowledges that a suspension of job referrals through the hiring hall could qualify as "discipline" if it were imposed as a sentence on an individual by a union in order to punish a violation of union rules.

*Id*. at 92 n.15.

We applied this distinction in *Brenner v. Local 514, United Bhd. of Carpenters & Joiners*, 927 F.2d 1283 (3d Cir 1991). In *Brenner*, plaintiffs filed a LMRDA § 609[1] claim

---

[1] Both § 609 – 29 U.S.C. § 529 – and § 101(a)(5) contain the phrase "otherwise discipline," and both usages have the identical meaning. *Finnegan v. Leu*, 456 U.S. 431, 438 n.9 (1982). Section 609 reads:

against their union, their local, and the local's business agent, alleging that the business agent, who administered the local's hiring hall, "disciplined" them by failing to refer them for employment in retaliation for their political opposition to the agent and his allies in the union. We affirmed the District Court's grant of summary judgment, holding that, as in *Breininger*, the plaintiffs had "failed to allege acts by the union acting in its official capacity and instead raised only ad hoc retaliations by the individual union official." *Id.* at 1297.

Although there can be a fine line between "discipline" and non-"discipline," we are not without guidance in this area. First, the suspension of job referrals by a hiring hall can qualify as "discipline," just as can a fine, suspension or expulsion. *Breininger*, 493 U.S. at 92 n.15. Second, the purpose of discipline must be to "enforce [the union's] rules," *id.* at 91, or to "punish a violation of union rules," as opposed to engaging in "ad hoc retaliation," *id*. at 92 n.15, motivated by "personal vendettas" such as a business agent's anger over a member's political views. *Id.* at 94. Third, the punishment must be "authorized by the union," *id*. at 91, or carried out by the union in its "official capacity," *id*. at 92 n.15, through "some sort of established disciplinary process," *id.* at 92, such as being the subject of a "tribunal" or of "proceedings" conducted by the union. *Id*. at 94.

Here, appellants assert types of punishment that could be considered "discipline" within the meaning of the Act, namely that Dressel and Local 164 suspended their job referrals and blacklisted them. There is no indication in the record, however,

---

It shall be unlawful for any labor organization, or any officer, agent, shop steward, or other representative of a labor organization, or any employee thereof to fine, suspend, expel, or *otherwise discipline* any of its members for the exercising of any right to which he is entitled under the provisions of this Act.

29 U.S.C. § 529 (emphasis added).

6

that Dressel's actions had the purpose of enforcing the union's rules, or of punishing a violation of those rules.  There is no union rule that the Travelers' letter violated; in fact, airing their dissatisfaction with Local 164 was an exercise of appellants' right to "express any views, arguments, or opinions" under § 101(a)(2).  (App. 28.)  Appellants acknowledge that the letter was not a formal complaint, but merely a request for assistance to Rossa.  Retaliating against the authors of an informal complaint letter is not the enforcement of union rules.

Even assuming that Dressel did everything he threatened to do in the June 7, 2001 letter, these acts did not rise to the level of formality the Supreme Court has required for them to have been punishment "authorized by the union" or carried out by the union in its "official capacity."  Dressel's refusal to refer the appellants, and mailing of a list of their names to other locals' managers in order to "blacklist" them, does not resemble "some sort of established disciplinary process," nor did it make appellants the subject of a union "tribunal" or "proceeding" through which they could claim they were denied the procedural due process required by § 101(a)(5).  Other courts of appeals have placed heavy reliance on this factor.  *See, e.g.*, *United Food and Commercial Workers Int'l Union Local 911 v. United Food and Commercial Workers Int'l Union*, 301 F.3d 468, 473-74 (6th Cir. 2002) (holding that retaliatory reassignment of plaintiff was not "discipline" because it "did not result from an established union disciplinary process").

Appellants argue that summary judgment was inappropriate because there are material questions of fact as to whether Dressel's conduct was authorized union conduct, and stress that their complaint alleges conduct by the union as an entity, not just conduct by Dressel.  They argue that Dressel "makes decisions about referrals as the expression of Local 164's authority and interests," (Appellants Br. 27-28), and that referrals for all experienced travelers were halted in retaliation for the Travelers' letter, not just referrals for the thirty travelers, thus demonstrating that his actions were "in fact a collective policy statement by Local 164."  (Appellants Br. 28-29.)

As the First Circuit explained in rejecting a nearly

7

identical argument:

> [T]he analysis set forth in *Breininger* is concerned less with the cast of the union member's complaint — the extent to which it characterizes the Union's actions as collective and official — than with the *nature* of the Union's conduct. Plaintiff has failed to allege, much less demonstrate, *that the Union as a body in a proceeding formal or informal*, deliberately voted to misrepresent the status of his grievance.

*Linnane v. General Electric Co.*, 948 F.2d 69, 72 (1st Cir. 1991) (emphases added). Here, even assuming that Dressel was authorized to act on Local 164's behalf in administering referrals, and further assuming that he intended his retaliation to affect all experienced travelers and not just the Travelers' letter signatories, appellants have failed to allege or demonstrate that the union as an entity, *through some kind of proceeding, formal or informal*, punished them in response to their letter. They were, it is clear, merely the victims of an "ad hoc retaliation by [an] individual union officer[]," *see Breininger*, 493 U.S. at 92 n.15, and were not "disciplined" within the meaning of § 101(a)(5). Thus, the District Court correctly granted summary judgment for Dressel and Local 164 on the § 101(a)(5) claim.

## II. Duty of Fair Representation Claim

The District Court dismissed appellants' claim that Dressel and Local 164 breached their duty of fair representation ("DFR") as time barred by the six-month statute of limitations for charges of unfair labor practices under § 10(b) of the National Labor Relations Act ("NLRA"), 29 U.S.C. § 160(b). The Court found that appellants' claim accrued in mid-June 2001, when it was reasonable that they would have become aware of the June 7, 2001 Dressel letter. Appellants filed their complaint on June 7, 2002, approximately one year after their claim accrued.

Appellants argue that the District Court erred in dismissing their claim because the six-month statute of

limitations was tolled while they pursued internal union remedies by writing their July 31, 2001 letter to Rossa charging that Dressel violated the IBEW constitution. Dressel and Local 164 counter that appellants failed to exhaust their remedies and, as a result, failed to toll the limitations period because they were required to file a complaint with the CBA-established Local 164 Appeals Committee, not with the IBEW.

Thus, the parties would have us address (1) whether appellants properly exhausted their internal union remedies before bringing suit, and assuming that they did, (2) whether exhausting their remedies tolled the § 10(b) six-month statute of limitations.

First, a plaintiff must exhaust his or her internal union remedies before bringing a claim against a union for breach of the duty of fair representation. *Goclowski v. Penn Cent. Transp. Co.*, 571 F.2d 747, 757 (3d Cir. 1977). Appellants did so. They pursued their remedies before the IBEW in good faith. Indeed, there is no evidence that appellants had any motive other than to have a detached, higher authority address their grievance with Dressel and Local 164, and the IBEW did just that. It sent a representative to meet with appellants to address their charges, held a hearing on the charges, and rejected the charges in a report dated June 26, 2002. There was never any indication from the IBEW that appellants, by presenting their appeal directly to the IBEW rather than first going to the Appeals Committee, were in the wrong forum, or that they had erred in any other respect in pursuing relief in this manner. *See Grasty v. Amalgamated Clothing & Textile Workers Union*, 828 F.2d 123 (3d Cir. 1987). To now hold that appellants are barred from seeking judicial relief when they followed a legitimate method of resolving the dispute within the union would subvert the "national labor policy of encouraging workers to pursue internal union remedies while ensuring them a judicial forum in which to resolve disputes." *See Frandsen v. Bhd. of Ry., Airline, and S.S. Clerks, Freight Handlers, Express and Station Employees*, 782 F.2d 674, 681 (7th Cir. 1986).

Second, it is premature to address the tolling argument because the parties and the District Court incorrectly used as

their base the six-month federal statute of limitations when they should have borrowed an analogous state statute under which appellants' DFR claim may well have been timely. Although this issue was not raised before the District Court and was not briefed by the parties on this appeal, we have the discretion to consider an issue that was waived where "refusal to reach [it] would result in a miscarriage of justice or where the issue's resolution is of public importance." *Bagot v. Ashcroft*, 398 F.3d 252, 256 (3d Cir. 2005) (internal quotations omitted). We have such a situation here.

Labor organizations owe an implied statutory duty of fair representation to their members under the NLRA, 29 U.S.C. § 151 *et seq. Breininger*, 493 U.S. at 73. A union member will often assert a claim for breach of the DFR in combination with a claim against his or her employer under § 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, for breach of a collective-bargaining agreement, *i.e.*, a so-called "hybrid" claim. *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 164-65 (1983). The Supreme Court held in *DelCostello* that the six-month statute of limitations found in § 10(b) of the NLRA for unfair labor practice charges applies to a hybrid action despite the general rule that federal courts apply the most closely analogous state statute of limitations to federal laws that fail to specify their own limitations period. The Court reasoned that the highly "interdependent" rights asserted in hybrid § 301/DFR claims were often identical to those asserted in unfair labor practice charges, and specifically cited the "family resemblance" between unfair labor practices and breaches of the DFR. *Id*. at 164, 170. Additionally, the Court found that the federal interest in "stable bargaining relationships and finality of private settlements" underlying § 10(b) was equally applicable to hybrid claims, which, like unfair practice charges, also involve the "employee's interest in setting aside the 'final and binding' determination of a grievance through the method established by the collective-bargaining agreement." *Id*. at 171.

Despite this "closely circumscribed" exception, the Court has stressed since *DelCostello* that analogous state statutes of limitations should be used for federal laws "unless they frustrate or significantly interfere with federal policies." *Reed v. United*

*Transp. Union*, 488 U.S. 319, 327 (1989).  Thus, in *Brenner*, we held that § 10(b)'s six-month limitations period does not apply to a DFR claim against a union when asserted without a corresponding claim against an employer for breach of a collective bargaining agreement because the federal "interest in the rapid resolution of labor disputes does not outweigh the union member's interest in vindicating his rights, when . . . a dispute is entirely internal to the union."  927 F.2d at 1295.  In light of *Reed*, it was not enough, we said, that the plaintiffs' lone DFR claim bore a "family resemblance" to an unfair labor practice charge, or that the DFR claim was asserted as a § 301 violation.  *Id.*  Because the plaintiffs were only asserting that their union wrongfully refused to refer them from its hiring hall, the dispute had "no more than an indirect influence on the union's ability to negotiate effectively with those employers who hire [union members] through the hiring hall," and, thus, *DelCostello* was inapposite.  *Id.*  We remanded the DFR claim for an application of the appropriate state statute of limitations. *Id.*

Here, just as in *Brenner*, appellants only claim that their union violated its DFR by refusing to refer them through its hiring hall and by its other retaliatory actions.[2]  Because they assert no claim against Guzzo or any other employer, this case involves a dispute "entirely internal to the union" where the federal "interest in the rapid resolution of labor disputes does not outweigh the union member's interest in vindicating his rights." *Id.*  Thus, the most closely analogous New Jersey statute of limitations applies, not the six-month period of § 10(b).

The District Court was correct to hold that appellants' DFR claim accrued in mid-June 2001, when they would have reasonably become aware of the June 7, 2001 Dressel letter because this is "when the plaintiff[s] kn[e]w[] or reasonably should [have] know[n] of the acts contributing to the union's wrongdoing in failing to adequately represent [their] interests."

_____

[2]In fact, unlike *Brenner*, appellants do not even assert a § 301 claim against the union, which further removes these facts from the hybrid scenario justifying the *DelCostello* exception.

11

*See Podobnik v. United States Postal Serv.*, 409 F.3d 584, 593 (3d Cir. 2005). Whether their June 7, 2002 DFR claim was filed in a timely fashion, however, will have be determined by the District Court on remand after it chooses the most analogous state statute of limitations. If, after that, appellants' claim is deemed untimely, the tolling argument they now seek to assert will be ripe for adjudication.

Therefore, we will vacate that part of the District Court's order finding the DFR claim to be untimely and remand for a determination of the appropriate state statute of limitations. If, on remand, it is determined that the DFR claim was timely, the state law claims should be reinstated. *See* 28 U.S.C. § 1367.