NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 17-2505

_____

DAVID BAKOS; RICHARD BELL; ROBERT BENJAMIN;
TERRY BROOKS; BRIAN CAMERON; DAVID COOPER;
DAVID CROWE; GREG FINCH; PATRICK FOLEY;
DEWEY GRAY; FRANCIS HEID; KELLI HUGHES;
GLENN KYRK; MURRAY MUZZALL; MARK NEWCOMB;
MICHAEL O'BRYAN; THOMAS O'CONNER;
WILLIAM PAYNE; MICHAEL PHELAN; CHERYL ROBLES;
STEPHEN ROGERS; DAVID SHASKAN; WHITNEY SIEBEN;
GILBERTO SMITH; WILLIAM TALLY; SCOTT TORRENCE;
DAVID WEXHLER, INDIVIDUALLY AND ON BEHALF OF A
CLASS OF SIMILARLY SITUATED AMERICAN AIRLINES PILOTS,
Appellants

v.

AMERICAN AIRLINES, INC.;
ALLIED PILOTS ASSOCIATION

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA
(D.C. No. 2-17-cv-00402)
District Judge: Hon. Wendy Beetlestone

_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
July 12, 2018

_____

Before: SHWARTZ, ROTH, and RENDELL, Circuit Judges.

(Opinion Filed: August 30, 2018)

_____

OPINION[*]

_____

SHWARTZ, Circuit Judge.

Plaintiffs, on behalf of a putative class of nearly 10,000 legacy American Airlines, Inc. ("American") pilots, contest seniority determinations following the merger of American and U.S. Airways. They sued American and the Allied Pilots Association (the "APA") (together, "Defendants") for breach of the duty of fair representation, in violation of the Railway Labor Act, 45 U.S.C. §§ 151-65, and for violation of the McCaskill-Bond Amendment to the Federal Aviation Act, 49 U.S.C. § 42112 note. They appeal the District Court's order granting Defendants' motion to dismiss. Because the District Court properly dismissed Plaintiffs' claims with prejudice, we will affirm.

I[1]

A

American and U.S. Airways merged in 2013, which required, among other things, integration of the seniority lists for American and U.S. Airways pilots. Pilot seniority is a significant labor issue in the airline industry because it determines pilots' compensation,

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.
[1] We draw the factual background largely from the allegations contained in the complaint, which we accept as true. Mammaro v. N.J. Div. of Child Prot. & Permanency, 814 F.3d 164, 166 (3d Cir. 2016). We also consider exhibits attached to the complaint, matters of public record, and undisputedly authentic documents if the complainant's claims are based upon such documents. Hartig Drug Co. v. Senju Pharm. Co., 836 F.3d 261, 268 (3d Cir. 2016).

opportunities for promotions, schedules and routes, types of aircraft flown, rank within a particular crew, and vulnerability to furloughs.

As part of the merger, American, U.S. Airways, the U.S. Airline Pilots Association (the "USAPA"), and the APA executed the "Memorandum of Understanding Regarding Contingent Collective Bargaining Agreement" (the "MOU"), which established, among other things, certain procedures for reaching a merger transition agreement between the APA and the merged airline, and a joint collective bargaining agreement. The MOU also provided, in § 10, that "[a] seniority integration process consistent with [the] McCaskill-Bond [Amendment] shall begin as soon as possible after the Effective Date [of the MOU]," and if negotiations did not lead to an integrated seniority list within 90 days, then the parties would proceed to arbitration before a panel of three arbitrators "pursuant to the authority and requirements of McCaskill-Bond." App. 87 (§ 10(a)). McCaskill-Bond provides that seniority lists of merged airlines shall be combined in a "fair and equitable manner" and establishes a procedure for resolving seniority integration disputes. 49 U.S.C. § 42112 note; Allegheny-Mohawk Merger Case, 59 C.A.B. 19, 45, 49 (1972).

The MOU required the parties to enter into a "Protocol Agreement" "consistent with McCaskill-Bond and . . . [Section] 10" that establishes the "process and protocol for conducting negotiations and arbitration," App. 88 (§ 10(f)). The parties thereafter executed the Protocol Agreement, which provided the parameters for arbitration and stated that, among other things, "[t]he Arbitration Board shall have the authority to establish a fair and equitable integrated seniority list as required by the McCaskill Bond"

3

Amendment. App. 109 (§ 7). Both the MOU and Protocol Agreement stated that arbitration and the integration of the seniority lists would be "final and binding." App. 88 (MOU § 10(c)), 114 (Protocol Agreement § 15).

Seniority integration went to arbitration, and the panel held nineteen days of hearings. Although the APA was the representative union for all pilots concerned, each group of pilots—from American, U.S. Airways, and America West—was represented by separate committees and legal counsel. The arbitrators considered the history of the merged airlines, where U.S. Airways had merged with American West but had not integrated their respective pilots' seniority lists, and seniority disputes as well as the MOU, Protocol Agreement, and the McCaskill-Bond Amendment, among other things, and issued an Award embodying an integrated seniority list (the "ISL").

B

Plaintiffs brought suit against the APA and American to enjoin enforcement of the Award and vacate or reform the ISL, based on alleged breaches of the duty of fair representation and violations of the McCaskill-Bond Amendment. Plaintiffs allege Defendants (1) breached the duty of fair representation because the APA approved the MOU and Protocol Agreement without review or input from legacy American pilots, did not compel resolution of the long-running U.S. Airways seniority dispute, failed to set standards in the MOU sufficient to protect the interests of legacy American pilots and did not provide for non-confidential review of the Award, and in these and other ways, disproportionately favored the U.S. Airways Pilots; and (2) failed to ensure the

4

integration of seniority lists in a "fair and equitable manner," as required by McCaskill-Bond.[2]

The District Court granted Defendants' motion to dismiss. Bakos v. Am. Airlines, Inc., 266 F. Supp. 3d 729 (E.D. Pa. 2017). The Court rejected Plaintiffs' claim that the APA acted arbitrarily and in bad faith when it failed to seek membership review or approval of the MOU or Protocol Agreement and discriminated against Plaintiffs when it agreed to a process that favored U.S. Airways pilots. Id. at 742-45. The Court also concluded Plaintiffs failed to plausibly allege that any breach in the duty of fair representation caused them damage, because it was not reasonable to infer that integration terms more favorable to Plaintiffs would have been accepted. Id. at 745-46. As to American, the District Court held Plaintiffs' "hybrid" claim under the Labor Management Relations Act, 29 U.S.C. § 185—which Plaintiffs did not formally plead— failed because (1) a breach of the duty of fair representation is a necessary predicate, and such a breach had not been alleged; and (2) there was no plausible allegation that American acted improperly. Id. at 746.

The District Court also dismissed Plaintiffs' McCaskill-Bond claim. Id. at 746-50. The Court held the McCaskill-Bond Amendment provides a private right of action, but the right is procedural rather than substantive, id. at 747-49, requiring only "that seniority integration take place in a 'fair and equitable manner'" which is "satisfied if the

---

[2] Plaintiffs also brought a claim for common benefit attorney's fees, which the District Court dismissed because that claim derives from their two substantive claims. Bakos v. Am. Airlines, Inc., 266 F. Supp. 3d 729, 750 n.1 (E.D. Pa. 2017).

5

employees have good faith representation during the integration process," id. at 749.

Having concluded Plaintiffs failed to plead a plausible claim for breach of the duty of fair representation, the District Court held they also failed to plausibly show that they were deprived of their right to integration in a fair and equitable manner under McCaskill-Bond. Id. at 749-50. Finally, the Court dismissed Plaintiffs' complaint with prejudice because it concluded amendment would be futile. Id. at 750.

Plaintiffs appeal.

## II[3]

### A

We exercise plenary review of a district court's order granting a motion to dismiss under Rule 12(b)(6). In re Vehicle Carrier Servs. Antitrust Litig., 846 F.3d 71, 79 n.4 (3d Cir. 2017). We apply the same standard as the District Court and decide whether the complaint, construed "in the light most favorable to the plaintiff," Santomenno ex rel. John Hancock Tr. v. John Hancock Life Ins. Co., 768 F.3d 284, 290 (3d Cir. 2014) (citation and internal quotation marks omitted), "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)), "but we disregard rote recitals of the elements of a cause of action, legal conclusions, and mere conclusory statements," James v. City of Wilkes-Barre, 700 F.3d 675, 679 (3d Cir. 2012).

---

[3] The District Court had jurisdiction pursuant to 28 U.S.C. § 1331. We have jurisdiction pursuant to 28 U.S.C. § 1291.

Like the District Court, we will first consider Plaintiffs' claims for breach of the duty of fair representation. A union breaches its duty of fair representation only when its "conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith." Vaca v. Sipes, 386 U.S. 171, 190 (1967); see Air Line Pilots Ass'n, Int'l v. O'Neill, 499 U.S. 65, 67 (1991). A union's conduct is arbitrary "only if, in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a wide range of reasonableness as to be irrational." O'Neill, 499 U.S. at 67 (citation and internal quotation marks omitted). "This 'wide range of reasonableness' gives the union room to make discretionary decisions and choices, even if those judgments are ultimately wrong." Marquez v. Screen Actors Guild, Inc., 525 U.S. 33, 45-46 (1998) (quoting O'Neill, 499 U.S. at 78). To show that union conduct was discriminatory, "a plaintiff must adduce substantial evidence of discrimination that is intentional, severe, and unrelated to legitimate union objectives." Addington v. U.S. Airline Pilots Ass'n, 791 F.3d 967, 984 (9th Cir. 2015) (internal quotation marks omitted) (citing Amalgamated Ass'n of St., Elec. Ry. & Motor Coach Emps. v. Lockridge, 403 U.S. 274, 301 (1971)). A bad-faith claim "requires a showing of fraudulent, deceitful, or dishonest action." White v. White Rose Food, 237 F.3d 174, 179 (2d Cir. 2001) (citation omitted). Plaintiffs also must show that "the breach directly cause[d] damage to an individual or group to whom the duty is owed." Deboles v. Trans World Airlines, Inc., 552 F.2d 1005, 1019 (3d Cir. 1977).

The District Court correctly concluded that Plaintiffs have failed to state a plausible claim for breach of the duty of fair representation. First, Plaintiffs have not provided allegations from which we can draw the reasonable inference that the APA acted arbitrarily or in bad faith in not seeking membership review or approval of the MOU, Protocol Agreement, and ISL. They have not pointed to any requirement that the APA submit these documents to the membership for review and approval, and without such a requirement, the APA cannot be in violation of its duty fairly to represent the legacy American pilots. See Confederated Indep. Unions v. Rockwell-Standard Co., 465 F.2d 1137, 1140 (3d Cir. 1972) ("The law does not require that a collective bargaining agreement be submitted to a local union or the union membership for authorization, negotiation or ratification, in the absence of an express requirement in the agreement, or in the constitution, by-laws or rules and regulations of the union."). Plaintiffs also have alleged no facts showing that the APA's conduct in the negotiations and arbitration was outside the "wide range of reasonableness" we afford unions, Marquez, 525 U.S. at 45-46, or that the APA had an adverse, ulterior motive. As to discrimination, Plaintiffs have set forth only conclusory allegations that the APA prioritized post-merger members and put American's military-trained and disabled pilots at a disadvantage. To the extent the allegations show that certain groups received benefits different from those others received, Plaintiffs have not plausibly alleged such a difference was unrelated to legitimate union objectives. See Addington, 791 F.3d at 984. Moreover, even though we need not address causation, Plaintiffs also have not demonstrated the ISL would have been any different if the APA had acted differently.

8

Plaintiffs also have failed to adequately allege a hybrid claim[4] against American. Establishing a breach of the duty of fair representation is a "necessary condition precedent" to a hybrid claim. Albright v. Virtue, 273 F.3d 564, 576 (3d Cir. 2001); see, e.g., Felice v. Sever, 985 F.2d 1221, 1226 (3d Cir. 1993). Because Plaintiffs have failed to adequately plead a claim for breach of the duty of fair representation, their hybrid claim necessarily fails.

The District Court therefore did not err in dismissing Plaintiffs' fair-representation claims.

C

Plaintiffs also assert the District Court erred in dismissing their McCaskill-Bond claim. The McCaskill-Bond Amendment codified sections 3 and 13 of the labor-protective provisions (the "LPPs") that the Civil Aeronautics Board (the "CAB") imposed in the Allegheny-Mohawk airline merger. 49 U.S.C. § 42112 note; Allegheny-Mohawk Merger Case, 59 C.A.B. at 45, 49; see also Flight Attendants in Reunion v. Am. Airlines, Inc., 813 F.3d 468, 472 (2d Cir. 2016). Section 3 states:

> Insofar as the merger affects the seniority rights of the carriers' employees, provisions shall be made for the integration of seniority lists in a fair and equitable manner, including, where applicable, agreement through collective bargaining between the carriers and the representatives of the employees

---

[4] A union member may assert "a claim for breach of the [duty of fair representation] in combination with a claim against his or her employer under § 301 of the Labor Management Relations Act . . . , 29 U.S.C. § 185, for breach of a collective-bargaining agreement, i.e., a so-called 'hybrid' claim." Bullock v. Dressel, 435 F.3d 294, 300 (3d Cir. 2006) (quoting DelCostello v. Int'l Bhd. of Teamsters, 462 U.S. 151, 164-65 (1983)).

9

affected. In the event of failure to agree, the dispute may be submitted by either party for adjustment in accordance with section 13.[5]

Allegheny-Mohawk Merger Case, 59 C.A.B. at 45.

We first must decide whether the McCaskill-Bond Amendment creates a private right of action. The Amendment does not expressly create one, so we must determine whether such a right is implied. Our inquiry is two-fold: "(1) Did Congress intend to create a personal right?; and (2) Did Congress intend to create a private remedy?"

---

[5] Section 13 provides:

(a) In the event that any dispute or controversy (except as to matters arising under section 9) arises with respect to the protections provided herein which cannot be settled by the parties within 20 days after the controversy arises, it may be referred by any party to an arbitrator selected from a panel of seven names furnished by the National Mediation Board for consideration and determination. The parties shall select the arbitrator from such panel by alternatively striking names until only one remains, and [s]he shall serve as arbitrator. Expedited hearings and decisions will be expected, and a decision shall be rendered within 90 days after the controversy arises, unless an extension of time is mutually agreeable to all parties. The salary and expenses of the arbitrator shall be borne equally by the carrier and (i) if the organization or organizations representing the employee or employees or (ii) if unrepresented, the employee or employees or group or groups of employees. The decision of the arbitrator shall be final and binding on the parties.
(b) The above condition shall not apply if the parties by mutual agreement determine that an alternative method for dispute settlement or alternative procedure for selection of an arbitrator is appropriate in their particular dispute. No party shall be excused from complying with the above condition by reason of having suggested an alternative method or procedure unless and until that alternative method or procedure shall have been agreed to by all the parties.

Allegheny-Mohawk Merger Case, 59 C.A.B. at 49. Here, through the MOU and the Protocol Agreement, the parties departed from the default arbitration procedures by agreeing to particular requirements for the arbitration process, including as to the hearings, briefing, deadlines, and selection of arbitrators.

10

Wisniewski v. Rodale, Inc., 510 F.3d 294, 301 (3d Cir. 2007). As to the first step, we analyze the statute's "text and structure" to determine whether it contains "'rights-creating' language." Id. at 301-02 (citing Alexander v. Sandoval, 532 U.S. 275, 288-89 (2001)). We may also look to the legislative history and other indicia of legislative intent. See id. at 303-04, 307-08.

We agree with the District Court that the statute creates a private right of action. First, the McCaskill-Bond Amendment contains "rights-creating language" because it is "clearly 'phrased in terms of the persons benefitted.'" Grammer v. John J. Kane Reg'l Ctrs.-Glen Hazel, 570 F.3d 520, 529-30 (3d Cir. 2009) (quoting Gonzaga Univ. v. Doe, 536 U.S. 273, 284 (2002)) (concluding the Federal Nursing Home Reform Amendments create a private right of action). The Amendment states that §§ 3 and 13 "shall apply to the integration of covered employees," 42 U.S.C. § 42112 note, which is directed at employees such as Plaintiffs here. Second, there is no agency tasked with enforcement, which suggests private plaintiffs may sue to enforce McCaskill-Bond's requirements. Cf. Wisniewski, 510 F.3d at 304 ("The reference to FTC enforcement combined with the absence of other enforcement provisions creates a presumption that FTC enforcement of the statute is exclusive.").[6]

We next determine the nature of that right and whether Plaintiffs have stated a plausible claim for relief. Plaintiffs argue that McCaskill-Bond allows us to review not

---

[6] We also note that, while the APA briefly asserts that no private cause of action exists under the Amendment, neither Defendant appealed the District Court's ruling on this issue.

11

only the procedure of seniority integration but also the substance—the merits—of the Award and ISL.  We may not, however, second-guess the merits because McCaskill-Bond grants Plaintiffs only procedural rights.  First, the text of the Amendment reflects that it does not permit substantive review.  It establishes that "provisions shall be made for the integration of seniority lists in a fair and equitable manner."  Allegheny-Mohawk Merger Case, 59 C.A.B. at 45; see 42 U.S.C. § 42112 note.  The word "manner" suggests the Amendment gives rights concerning the integration procedure but not the ultimate outcome.  Second, when the CAB regulated airline mergers and enforced the Allegheny-Mohawk LPP until it was abolished in 1985, see Bakos, 266 F. Supp. 3d at 737, it "considered its authority limited to deciding whether [an] arbitration had been conducted 'in a fair and equitable manner,' i.e., as a procedural matter, rather than whether the terms of the award were substantively equitable," Cook v. Pan Am. World Airways, Inc., 771 F.2d 635, 642 (2d Cir. 1985) (emphasis and citation omitted), abrogated on other grounds by Lorance v. AT & T Techs., Inc., 490 U.S. 900 (1989).  Moreover, even if the substantive terms of the award were within the scope of our review, Plaintiffs have failed to allege precisely how the award was not substantively fair or equitable.  Third, as courts have recognized, the "basic rule" of McCaskill-Bond is simply that seniority lists must be merged, rather than putting employees of the acquired airline at the bottom of the acquiring airline's list.  Flight Attendants in Reunion, 813 F.3d at 473; Comm. of Concerned Midwest Flight Attendants for Fair & Equitable Seniority Integration v. Int'l Bhd. of Teamsters Airline Div., 662 F.3d 954, 957 (7th Cir. 2011).  Fourth, judicial review of the substance of an arbitration award would be contrary to the requirement that,

12

as the parties agreed, arbitration be "final and binding."  Allegheny-Mohawk Merger

Case, 59 C.A.B. at 49 (§ 13(a)); App. 88 (MOU § 10(c)), 114 (Protocol Agreement § 15).

Finally, such review would go against the fundamental principle that arbitral awards are

subject to review on only limited grounds.  See, e.g., Cook, 771 F.2d at 643 (observing

that the CAB, when it was tasked with reviewing airline mergers, scrutinized freely-

negotiated integrated seniority lists only on a showing of bad faith, a deliberate attempt to

circumvent the CAB's order, or other compelling circumstances, and would not find § 3

satisfied unless it determined the employees affected were adequately represented; but

outside of these "exceptions, which go to the 'manner' in which the arbitration was

conducted, the CAB le[ft] the resolution of all other issues to the parties or their

mutually-selected arbitrator"); Kane Gas Light & Heating Co. v. Int'l Bhd. of Firemen,

Local 112, 687 F.2d 673, 678 (3d Cir. 1982) (noting the "narrow scope of review" of

arbitration awards in labor disputes because of the "strong Congressional policy of

encouraging the peaceful resolution of labor disputes by means of binding arbitration,"

and as a result, "courts decline to review the merits of arbitration awards"); Allegheny-

Mohawk Merger Case, 59 C.A.B. at 33 n.28 (stating that the CAB did not "intend to deny

the parties to arbitration proceedings their usual rights to have an arbitration award set

aside or corrected, for instance, where the arbitrator exceeded his powers or where an

evident miscalculation of figures was made").  Thus, to the extent any judicial review is

permitted, its scope is narrow.  Plaintiffs ask for review that exceeds those limits, which

we cannot do.  Because Defendants "adhered to the 'basic rule' of McCaskill-Bond" by

"merging the airlines' seniority lists," Flight Attendants in Reunion, 813 F.3d at 473

13

(quoting Comm. of Concerned Midwest Flight Attendants for Fair & Equitable Seniority Integration, 662 F.3d at 957), and Plaintiffs have not plausibly alleged the arbitration was procedurally unsound or stated a plausible claim for breach of the duty of fair representation,[7] the District Court correctly dismissed Plaintiffs' McCaskill-Bond claim.

D

The District Court also did not abuse its discretion in dismissing Plaintiffs' claims with prejudice. See, e.g., Cal. Pub. Emps.' Ret. Sys. v. Chubb Corp., 394 F.3d 126, 163 (3d Cir. 2004) (stating that we review the denial of leave to amend for abuse of discretion). Plaintiffs have proffered no facts or proposed amended complaint showing that the APA engaged in unreasonable or discriminatory conduct in connection with the arbitration and resulting ISL. No facts have been alleged showing that the process here, which resulted from pre-arbitration negotiations and agreements, hearings during which each group of pilots was represented by its own committee and counsel, and a comprehensive award by a panel of experienced arbitrators, gives rise to the claims Plaintiffs assert. Thus, the District Court did not abuse its discretion in dismissing the complaint with prejudice.

III

For the foregoing reasons, we will affirm.

---

[7] We have assumed but do not decide whether McCaskill-Bond creates a private remedy.

14