NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 19-1924
_____

KENNETH STAFFORD,
Appellant

v.

TROOPER JOSEPH B. MORRIS; TROOPER DANIEL HARRIS
TROOPER JOSEPH YURAN; TROOPER RONALD FLAGLEY,
individually and in their official capacities as trooper for the State Police;
CORPORAL DANIEL SIDLINGER, individually and in his official capacity
as corporal for the State Police; JOHN DOES 1-10

_____

Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civil Action No. 2-17-cv-00749)
District Judge: Honorable Marilyn J. Horan
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
May 26, 2020

Before: AMBRO, HARDIMAN, and RESTREPO, <u>Circuit Judges</u>

(Opinion filed: June 26, 2020)
_____

OPINION[*]
_____

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

AMBRO, Circuit Judge

Kenneth Stafford appeals the District Court's grant of summary judgment to Trooper Joseph B. Morris on Stafford's malicious prosecution claim. He argues that there was no probable cause to arrest and prosecute him. For the reasons discussed below, we affirm the District Court's order.

## I.        Factual and Procedural Background

On February 24, 2015, Trooper Daniel Harris filed a report concerning a child-luring incident reported by two children. An unidentified man in a dark green pickup truck approached a twelve-year-old girl (the "First Victim") and an eight-year-old boy (the "Second Victim") as they were walking toward their school bus stop and offered them a ride. The children, who were brother and sister, described the perpetrator as a white man in his fifties with a thin build, short brown hair, and a mostly gray, full beard, wearing a brown baseball cap and transition-style glasses. The sister also reported that the same man, driving the same truck, had approached her a few weeks earlier.

On April 6, 2015, Trooper Joseph P. Yuran filed a child-luring incident report concerning a nine-year-old boy (the "Third Victim"). A man in a white truck stopped the boy and asked him if he wanted any candy. The child described the perpetrator as an old white man with a four-inch "salt [and] pepper" beard wearing a brown baseball cap and glasses. Appx. 252.

On April 13, 2015, Corporal Dan J. Sindlinger filed a child-luring incident report concerning a fourteen-year-old girl (the "Fourth Victim"). A man in a white truck approached the girl and asked her to help him find his dog. She responded "no" when the

perpetrator approached her and ran back to her house. *Id*. at 257. She described the perpetrator as a male in his forties or fifties with salt and pepper hair and a "bushy" goatee. *Id*. at 258.

After responding to the April 13 occurrence, Sindlinger spoke with Yuran, who told him about one of the first two incidents. Sindlinger then learned that all three had similar suspect descriptions and that all the children lived "in sight of one another." *Id*. His report stated that one of the incidents involved a tan pickup truck and the other two involved a white pickup truck. On April 14, 2015, a press release was submitted to local news media regarding the three incidents, and it included a description of the suspect and the vehicles involved.

The day after the press release, the wife of Stafford reported him missing. Trooper Ronald Fagley responded to the call and prepared a missing persons report. The wife stated that Stafford had left a note, in which he wrote that he was having "crazy thoughts" and had reached his "breaking point." Appx. 262. She and Stafford's son both reported that Stafford had never done anything like this and noted that he was stressed and had argued with his wife recently.

Shortly thereafter, Morris, who had been investigating the child luring incidents, learned about Stafford's disappearance during a briefing. Morris began to view Stafford as a suspect because he believed that the description of Stafford matched those of the luring incidents' perpetrator, and because he had disappeared the day after the press release announcing these incidents.

Morris then developed a photographic line up of individuals who looked similar to Stafford and presented it to three of the victims, ages nine through fourteen. The First Victim did not identify Stafford as her perpetrator and "indicated that she did not recognize anyone in the lineup." Appx. 269. Morris did not meet with the Second Victim. The Third Victim identified Stafford as the perpetrator, agreed that he was "one hundred percent positive" that Stafford had tried to lure him. *Id*. Finally, the Fourth Victim indicated the perpetrator looked similar to two images in the lineup, pointing to Stafford's and another individual's photos, but stated that she was not sure.

On April 20, 2015, Morris filed a criminal complaint against Stafford, accusing him of violating § 2910(a) of the Pennsylvania Criminal Code (luring a child into a motor vehicle or structure). Morris drafted an affidavit of probable cause (the "Morris Affidavit") in support of the criminal complaint. The Morris Affidavit set forth, among other things: (1) the perpetrator of at least two of the incidents was in his fifties, had a beard, and drove a white truck; (2) Stafford looked similar and had a white truck on his property; (3) the day after the press release informing the public of the child luring incidents, Stafford disappeared, leaving a note for his wife in which he stated that he was having "crazy thoughts," Appx. 262; and (4) one of the victims, when shown a photographic array, was "one hundred percent positive," *id*. at 269, that Stafford was the man who approached him in a white truck and asked him whether he wanted candy, *id*. at 453–54.

A magistrate judge concluded that the information in the Morris Affidavit established probable cause and issued an arrest warrant for Stafford. He was arrested and

charged with two felony counts of child luring, one misdemeanor count of child luring, and one count of flight to avoid apprehension or punishment. Following a jury trial, he was found not guilty on all charges.

Stafford then brought this action against all officers involved, alleging false arrest, false imprisonment, and malicious prosecution, but later withdrew his claims against all defendants except Morris. Following discovery, the District Court granted Morris's motion for summary judgment. Stafford argued that the Morris Affidavit contained material misstatements and omissions that defeated probable cause. The District Court concluded, after reconstructing word-by-word the Morris Affidavit to exclude any alleged misstatements and include any omitted information, that a magistrate judge still could have found probable cause for Stafford's arrest and prosecution, and hence accordingly all his claims failed. *See Stafford v. Morris*, No. 17-cv-749, 2019 WL 1367427, at \*7–9 (W.D. Pa. Mar. 26, 2019).

This appeal followed.

## II.    Discussion[1]

A claim for malicious prosecution requires evidence that: (1) the defendant began a criminal proceeding; (2) he did so without probable cause; (3) he acted maliciously; (4) the proceeding ended in the plaintiff's favor; and (5) the plaintiff suffered a deprivation

---

[1] The District Court had subject-matter jurisdiction under 28 U.S.C. §§ 1331 and 1343 to hear this civil rights action brought pursuant to 42 U.S.C. § 1983. We have jurisdiction to review the District Court's grant of summary judgment under 28 U.S.C. § 1291 and do so on a clean slate. *Andrews v. Sculli*, 853 F.3d 690, 696 (3d Cir. 2017). "Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Id.* (citation omitted).

of liberty. *See DiBella v. Borough of Beachwood,* 407 F.3d 599, 601 (3d Cir. 2005). Stafford attacks the District Court's conclusion as to probable cause. He repeats that the Morris Affidavit contained material omissions and false statements of fact that defeated the probable cause finding by the magistrate judge.

"[P]robable cause to arrest exists when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." *Dempsey v. Bucknell Univ.*, 834 F.3d 457, 467 (3d Cir. 2016) (citation omitted). It is a "fluid concept" and requires courts to apply a "totality-of-the-circumstances approach." *Illinois v. Gates*, 462 U.S. 213, 232–33 (1983).

When an arrest is based on a valid warrant, courts conduct a two-pronged analysis to determine whether probable cause existed. *See Andrews v. Scuilli*, 853 F.3d 690, 697 (3d Cir. 2017). They ask, "first, whether the officers, with at least a reckless disregard for the truth, made false statements or omissions that created a falsehood in applying for the warrant, and second, whether those assertions or omissions were material, or necessary, to the finding of probable cause." *Id*. (citing *Wilson v. Russo*, 212 F.3d 781, 786–87 (3d Cir. 2000) (internal quotation marks and alteration omitted)).

Regarding the first element, an assertion is made with reckless disregard when "viewing all the evidence, the affiant must have entertained serious doubts as to the truth of his statements or had obvious reasons to doubt the accuracy of the information reported." *Id.* at 698 (quoting *Wilson*, 212 F.3d at 788). "Omissions are made with reckless disregard where an officer withholds a fact in his ken that any reasonable person

6

would have known was the kind of thing the judge would wish to know." *Id.* (quoting *United States v. Jacobs*, 986 F.2d 1231, 1235 (8th Cir. 1993) (internal quotation marks and alterations omitted)). With respect to the second element, "when a court determines that information was asserted or omitted in an affidavit of probable cause with at least reckless disregard for the truth, it must perform a word-by-word reconstruction of the affidavit" and determine whether the reconstructed affidavit would establish probable cause. *Dempsey*, 834 F.3d at 470.

Stafford argues that Morris made misleading assertions in his Affidavit, including (1) changing the color of the hair of the perpetrator described by two victims as brown to gray (Stafford's hair color); (2) changing the color of the perpetrator's vehicle identified by two victims as dark green to dark green *or brown*, a color similar to Stafford's vehicle color; (3) adding a color to the perpetrator's beard matching Stafford's beard color, gray; (4) exaggerating why Stafford left his home, as related to his family circumstance; and (5) asserting that Stafford matched the description of the perpetrator.

Stafford also argues that Morris made several material omissions in his Affidavit, including omitting that (1) the Fourth Victim reported the perpetrator looked similar to Stafford and another individual; (2) the First Victim affirmatively stated she did not recognize anyone in the lineup; (3) the Third Victim, the sole victim to identify Stafford, had previously informed Yuran on the day of the incident that "[he] really did not pay that close attention to him . . . . It was getting pretty dark," Appx. 253; (4) Morris did not conduct a photographic line up with Victim Two; (5) three victims' description of the perpetrator as having a "thin build," while Stafford weighed 240 pounds, *id.* at 248, 450;

7

(6) the Third Victim described the perpetrator's hair as "salt and pepper," while Stafford had gray hair, *id*. at 252, 450; (7) the Third Victim's description of the perpetrator's long, full beard, while Stafford wore a short goatee; and (8) the Stafford family's explanation that Stafford had been fighting with his wife.

As required by *Dempsey*, the District Court performed a detailed word-for-word reconstruction of the Morris Affidavit, using Stafford's proposed alterations. *See Stafford*, 2019 WL 1367427, at *6–7. The reconstructed affidavit specifies that the victims described the perpetrator as having a thin build, provides a more specific description of the perpetrator's hair and beard, incorporates additional information Stafford's family reported to the police, clarifies that two of the victims were unable to identify Stafford as the perpetrator in the photographic array, makes clear that the Third Victim previously stated he was not paying much attention, and virtually includes all the information Stafford complains was omitted or changed. *Id.*

Based on that reconstructed affidavit, the District Court determined that "a neutral, detached magistrate . . . would conclude that probable cause . . . [was] established in light of the multiple and substantially consistent reports from the victims, the proximity of the incidents, and the close connection between the media report of the child luring incidents and [] Stafford's disappearance." *Id*. at *8. "Victim Three's positive identification . . . weigh[ed] heavily in favor of this determination." *Id*. The Court concluded that Stafford's probable cause argument failed the second prong of the probable cause analysis—"[t]he omissions and misstatements were not material or necessary to the finding of probable cause. The variations regarding the descriptions of the perpetrator

8

. . . were minimal. Under the totality of circumstances, such discrepancies, even assuming they were recklessly made, would not affect the existence of probable cause." *Id.* at *9. "In addition, none of the information provided by [] Stafford's family was inconsistent with, or exculpatory, as to [] Stafford having apparently fled the area shortly after the media reported the child luring incidents." *Id*.

We agree with the District Court. We have consistently held that a statement from a victim witness is generally sufficient to establish probable cause. *See, e.g.*, *Sharrar v. Felsing*, 128 F.3d 810, 818–19 (3d Cir. 1997) (finding probable cause to arrest following a reliable identification by a victim even though she initially identified a different person as her assailant before changing her story to identify the arrestee); *Merkle v. Upper Dublin Sch. Dist.*, 211 F.3d 782, 790 (3d Cir. 2000) (holding that it was reasonable for the police to believe an eyewitness was telling the truth when they began a prosecution).

Here the Third Victim positively identified Stafford in a photographic lineup. Although the reconstructed affidavit should have included language that Morris did not take any steps to ensure that the Third Victim, a nine-year-old boy, understood the difference between truth and lies, the absence of that information does not support that the Third Victim was inherently unreliable. Moreover, Stafford cites no legal authority to establish that Morris was required to take additional steps to ensure that the Third Victim was reliable. Although "[i]ndependent exculpatory evidence or substantial evidence of the witness's own unreliability that is known by the arresting officers could outweigh the identification such that probable cause would not exist," *Wilson* 212 F.3d at 790, the

9

reconstructed affidavit does not present independent exculpatory evidence that the Third Victim was inherently unreliable.

Stafford's remaining arguments are unavailing. He relies heavily on *Andrews*, in which we reversed a grant of summary judgment on a malicious prosecution claim. 853 F.3d at 704–05. There the plaintiff was prosecuted for one alleged instance of child luring of a fifteen-year-old girl. She described the perpetrator as "a white male with dark hair, around 35 years old," and his vehicle as "a red, four-door sedan" with a "Pennsylvania license plate bearing the letters ACG." *Id*. at 695. The girl later followed the plaintiff, obtained his license plate number, and reported it to the police. The police performed a photo array resulting in the girl identifying the plaintiff as the perpetrator. Thereafter, the defendant officer completed an affidavit of probable cause that led to the arrest and prosecution of the plaintiff who was ultimately acquitted. *Id.* In the officer's affidavit, he changed the girl's initial description of the man to "a middle[-]aged white male with dark hair with streaks of gray," and omitted both her initial description of the vehicle plate number bearing the letters "ACG" and that the plaintiff's vehicle was actually a three-door coupe with a Pennsylvania license bearing JDG4817. *Id*. at 696, 700. We concluded that the misstatements and omissions in the affidavit defeated probable cause because, even where there is a positive identification, "glaring discrepancies in the witness' testimony can undermine the reliability of the positive identification." *Id*. at 702.

*Andrews* is distinguishable. The officer's affidavit omitted information from the sole witness to the crime, and there was reason to doubt the reliability of the sole

10

witnesses' identification of the arrestee—the obvious discrepancies. There are no comparable inconsistencies in the Third Victim's statements here, and the totality of the circumstances in this case, including similarities in the other victims' statements and the circumstances of Stafford's disappearances, taken together, allow the probable cause determination to stand. In reversing the grant of summary judgment in *Andrews*, we expressly distinguished *Wilson*, a case involving multiple witnesses, one of whom reliably identified the arrestee, stating "unlike *Wilson*, all evidentiary roads lead back to one person." *Id*. at 704. Unlike *Andrews*, and like *Wilson*, here there were multiple witnesses who described the perpetrator's appearance and vehicle.

Moreover, we have previously held that discrepancies of the kind Stafford points to are usually insufficient to void probable cause. In *Wilson*, for example, we concluded that evidence the perpetrator was taller than the arrestee, and one of the two victims failed to identify the arrestee when shown a photo array, did not outweigh the positive identification from another witness. *See* 212 F.3d at 791–92. We explained that the discrepancy between an initial description of a perpetrator as between 6'2" and 6'5" and a later identification of the perpetrator as 5'11" did not render the identification unreliable. *See id*. at 783, 792. Similarly here, the discrepancies regarding Stafford's facial hair and weight, and the failure of another victim to identify Stafford positively, do not undermine the similarities, including the description of the vehicle and the reliable identification by one of the victims. *See Dempsey*, 834 F.3d at 479–81 (affirming grant of summary judgment in a malicious prosecution case and holding that an officer's

11

failure to include certain conflicting witness statements in the affidavit did not undermine the existence of probable cause).[2]

\* \* \* \* \*

Accordingly, we affirm the District Court's order granting Morris summary judgment.[3]

---

[2] Stafford forfeited his false arrest and false imprisonment claims because he failed to raise them adequately in his opening brief before us. While he discussed the elements of a malicious prosecution claim in detail, Stafford Br. 26–27, he mentioned his false arrest and imprisonment claims only when reciting the procedural history of this case, *id*. at 5. Such passing reference was insufficient to preserve his claims. *See John Wyeth & Bro. Ltd. v. CIGNA Intern. Corp.*, 119 F.3d 1070, 1076 n.6 (3d Cir. 1997).

Even if he had properly preserved his false arrest and false imprisonment claims, those claims fail for the same reason as his malicious prosecution claim, for they also require a plaintiff to show that officers lacked probable cause. *See Kossler v. Crisanti*, 564 F.3d 181, 186 (3d Cir. 2009) (reciting elements of a malicious prosecution claim); *James v. City of Wilkes-Barre*, 700 F.3d 675, 680, 682–83 (3d Cir. 2012) (reciting elements of false arrest and false imprisonment claims).

[3] In this context we need not decide whether Morris acted with malice. *See Andrews*, 853 F.3d at 697 (describing the two-prong probable cause test in the conjunctive, using "and," not "or"); *Wilson*, 212 F.3d at 786–87 (same). And given that Stafford's claims fail, we also need not decide whether Morris would have been protected by qualified immunity.